LAND CLEARANCE FOR REDEVELOPMENT AUTHORITY OF CITY OF ST. LOUIS v. CITY OF ST. LOUIS et al.

No. 44430.

Supreme Court of Missouri.

En Banc.

July 20, 1954.

Jacob M. Lashly, M. P. Phillips, St. Louis, for plaintiff-appellant.

Samuel H. Liberman, City Counselor, William J. Murray, Associate City Counselor, St. Louis, for City of St. Louis.

Richard A. Hetlage, St. Louis, for intervenor Urban Redevelopment Corp. of St. Louis.

Rexford H. Caruthers, St. Louis, for appellant Mesco Realty Co., Inc.

HOLLINGSWORTH, Judge.

This is an action by the Land Clearance for Redevelopment Authority of the City of St. Louis against defendant City of St. Louis. It is brought under the Declaratory Judgments Act. The prayer is that the court enter a declaratory judgment con-

struing the provisions of a Cooperation Agreement between the plaintiff Land Clearance Authority and the defendant City, dated March 24, 1954, and determine its validity as well as the legality of the plans, resolutions, ordinances and statutes upon which the Cooperation Agreement depends, and to direct and adjudge that the plaintiff and defendant shall proceed with the plans and purposes pleaded and shown in evidence, to the end that Project Area "A" in the City of St. Louis may be taken over, cleared of slums and placed in the course of redevelopment by a qualified redeveloper. The answer of the City of St. Louis admits the allegations of the petition and invites the court to determine the legality and validity as well as the scope and extent of the statutes, ordinances, resolutions and agreements set forth and referred to in plaintiff's petition, joining in the prayer for a declaratory judgment. Upon the day set for hearing, the Mesco Realty Co., Inc., and Urban Redevelopment Corporation of St. Louis separately intervened by leave of court and filed answers. Mesco is a private corporation and taxpayer, owning a parcel of real estate within Project Area "A". By their answers intervenors tender the issue of validity of the Cooperation agreement and the statutes and ordinances involved in the proceedings by challenging the legality thereof. After hearing the evidence, the court rendered a decree sustaining the prayer for declaratory judgment and disposing of the issues favorably to the petition and claims of the plaintiff, but in some respects asserted by plaintiff and defendant to be insufficient, inadequate and incomplete. After separate motions for new trial by plaintiff, defendant and intervenor Mesco Realty Co., Inc., which were overruled, said three parties have prosecuted this appeal. The intervenor Urban Redevelopment Corporation of St. Louis did not appeal.

In its motion for new trial and in this court plaintiff contends that the decree rendered by the trial court fails (1) to remove the uncertainty and doubt of the rights and privileges of plaintiff and defendant claimed in the pleadings and under the evidence and (2) to determine the powers of plaintiff and defendant to pass the ordinances, adopt the resolutions, make the findings and enter into the contracts and Cooperation Agreement and do the other things contemplated and necessary to lawfully effectuate the plan and project by plaintiff and defendant undertaken as reflected in this proceeding. Defendant, both in its motion for new trial and on this appeal, complains of inaccuracy of the decree and here seeks a more complete and detailed adjudication of its right to enter into the Cooperation Agreement and all of its obligations assumed thereunder. Intervenor Mesco Realty Co., Inc., challenges the constitutionality of certain sections of the Land Clearance for Redevelopment Authority Law.

The object and purpose of the proceeding is the rehabilitation of an insanitary area between 18th and Market Streets on the south and west and 14th and Olive Streets on the east and north, in the City of St. Louis. Between Memorial Plaza and Union Station, there is an area on the fringe of the congested district of the City which was declared insanitary, as defined in Section 99.320(10) Cum.Supp. RSMo 1953, V.A.M.S., first by action of the board of aldermen, and again by the court. The evidence showed the predominance of buildings which, by reason of dilapidation, deterioration, age and obsolescence and through many deficiencies of ventilation, light, air, sanitation and breathing spaces, high density of population in the residential portions, and the existence of conditions dangerous to life and safety as well as conducive to ill health, transmission of disease, infant mortality, juvenile delinquency and crime, on the whole make the area detrimental to the public health, safety, morals and welfare.

Due to extreme housing shortages and other reasons during the second World War, there has been an intensification of demand throughout the country for legal means to deal with conditions such as this. Through appropriate exercise of state police power, a slum premise could be extinguished in the interest of public health, safety or

welfare. But it was thought by some courts that police power could be made effective only to the point of demolition of the blighted spot and removal of that particular cause of public danger. The Constitutional Convention of Missouri of 1945 undertook to supply any hiatus in legislative authority to provide for the redevelopment of slum areas by the adoption of a special provision relating thereto. Article VI, § 21, of the new Constitution, V.A.M.S., authorized the Legislature and constitutional charter cities to provide for land clearance in proper cases, and for the taking of fee simple titles to property involved in the taking operations, so that it might be sold with such restrictions upon the future land use as would prevent its relapse into the former condition of blight. And, as an inducement to purchasers and redevelopers, Article X on taxation, Sec. 7, of the Constitution of 1945, was written to enable the General Assembly to provide tax concessions calculated to encourage programs of rehabilitation. In 1951 the Land Clearance for Redevelopment Law, Sections 99.300 to 99.660, 1953 Cum.Supp. RSMo, V.A.M.S., was passed, which translated into working machinery the rights, powers and privileges authorized in Article VI, § 21, of the Constitution of 1945. The City of St. Louis, acting under this authority, created a Land Clearance for Redevelopment Authority for that City by Ordinance No. 45977, approved on February 18, 1952. A legislative finding was there made by the Board of Aldermen to the effect that blighted and insanitary areas existed in the City of St. Louis and that redevelopment of such areas was necessary, and thereupon approved the exercise by the Land Clearance for Redevelopment Authority of the City of St. Louis of the powers, functions and duties authorized under the foregoing statutes.

The evidence shows in detail the steps taken, from the adoption of an over-all city plan by the City Plan Commission to the preparation and drafting of a specific plan for Project Area "A" here involved. The plan was adopted by the Land Clearance Authority, its action in this regard being evidenced by its reso-lutions 11 and 13, and was transmitted to the Board of Aldermen with recommendations for its approval. The plan was approved by regular action of the Board of Aldermen of the City of St. Louis, expressed in Ordinance No. 46497. A Co-operation Agreement to aid in the consummation of the plan of redevelopment for Project Area "A" was entered into between the Land Clearance Authority and the City, providing reciprocal rights and duties of the two contracting parties, and this contract likewise was authorized and approved by the Board of Aldermen of the City. The plan projects and the provisions of the Co-operation Agreement support the acquisition of the entire property in the project area, with the exception of three specific parcels, that is to say, two churches and a relatively new apartment building erected after the plan for redevelopment of the area was made public, which three parcels are not disturbed by these proceedings.

It is proposed that after the plaintiff shall acquire the property, one section of it running along the north side of Market Street from 15th to 18th Streets shall be sold to the City of St. Louis for a park which would connect the Aloe Plaza, lying directly in front of Union Station, with Memorial Plaza, lying in front of the City Hall, Municipal Courts and Kiel Memorial Auditorium. A bond issue proposition submitted to the voters on the 29th day of September, 1953, in the sum of $1,500,000, was carried at the election, and these funds are to be made available for the purchase of the park site. The evidence shows that the Home and Housing Finance Agency of the Federal Government is agreeable to accept the use value of this park as an adjunct to the proposed redevelopment project as a credit upon the City's assumption of one-third of the net cost of the project when made ready for redevelopment.

There is no dispute that the evidence supports the claim that Area "A" is an insanitary area within the meaning of the statute and the city ordinance involved.

It is proposed that the plaintiff will acquire the property in the site by gift, pur-

chase or by condemnation proceedings in the exercise of eminent domain, clear the same for rehabilitation and sell it to an urban redeveloper who may qualify under the Urban Redevelopment Corporations Law, Chapter 353, RSMo 1949, V.A.M.S., or any other qualified person who may enter into a redevelopment relationship with the plaintiff. It is expected that the cost of acquisition and clearance of the property will exceed its sale value for redevelopment purposes. This differential, representing the net cost of the project, is to be financed by the Federal Government under the Housing Act of 1949 up to two-thirds of the loss. 42 U.S.C.A. § 1454; Section 353.160 RSMo 1949, V.A.M.S. The other one-third is to be furnished by the City of St. Louis. The credit of the public park area toward this one-third obligation of the City of St. Louis has been described previously.

The evidence shows also that the Board of Aldermen appropriated from general revenue the sum of $10,000 as a local grant in aid (Ordinance No. 46993) as a beginning, and transferred by deed to the plaintiff one parcel of vacant unimproved real property which it owned in Area "A" (Ordinance No. 46994) also as a local grant in aid, both to be applied toward the discharge of its obligation.

█ At the threshold of consideration of this appeal we are confronted with the grave question whether the petition and the answer of defendant City present a justiciable controversy. The Declaratory Judgments Act, Sections 527.010–527.140, RSMo 1949, V.A.M.S., was enacted in 1935. In an article written by Judge Laurance M. Hyde shortly after its enactment and published in Vol. XXVI, No. 4, of the Washington University Law Quarterly, under date of June, 1941, he stated: "One thing is certainly now settled, and that is that a declaratory judgment is neither an advisory opinion nor a decision of a moot question, because it must involve a real controversy in which the result would be res judicata between the parties." Further, in said article, he stated: "The rule as to necessary parties could hardly be better stated than in the rule of the Scottish Courts that there must at least be as a party 'a proper contradicter,' namely: 'Someone presently existing, who has a true interest to oppose the declaration sought.'" See Russian Commercial & Industrial Bank v. British Bank, 1921, 90 L.J.K.B.N.S. 1089, 19 A.L.R. 1101.

With one exception to be hereinafter noted, we have consistently followed the doctrine above announced in construing the Act. In the case of City of Joplin v. Jasper County, 349 Mo. 441, 161 S.W.2d 411, 413, we said: "But, when it [the Declaratory Judgments Act] is attempted to be so used and a judicial declaration is sought the court must be presented with a justiciable controversy—one appropriate for judicial determination—a case admitting of specific relief by way of a decree or judgment conclusive in character and determinative of the issues involved. (Citing cases.) There must be a sufficiently complete state of facts presenting issues ripe for determination before a court may declare the law. 'A mere difference of opinion or disagreement or argument on a legal question affords inadequate ground for invoking the judicial power.'" See also Tietjens v. City of St. Louis, 359 Mo. 439, 222 S.W.2d 70; City of Camdenton v. Sho-Me Power Corp., 361 Mo. 790, 237 S.W.2d 94. And in State ex rel. Chilcutt v. Thatch, 359 Mo. 122, 221 S.W.2d 172, 176, we said: "No justiciable controversy exists and no justiciable question is presented unless *an actual controversy exists between persons whose interests are adverse in fact.*" (Emphasis ours.) See also Contracting Plumbers Ass'n v. City of St. Louis, Mo.App., 249 S.W.2d 502, 505. Such is also the great weight of authority elsewhere. See 9 Uniform Laws Annotated, Uniform Declaratory Judgments Act, pages 234 et seq., notes 52–58.

Turning now to the pleadings. After alleging the facts hereinabove set forth, plaintiff alleges that the right, power and authority of the City to execute and consummate the hereinabove mentioned Co-operation Agreement *may be drawn into*

*question* on the several constitutional grounds thereinafter stated.

The answer of the City to these allegations is: (a) It is the owner of certain parcels of real estate situated within the area referred to in the petition; (b) the City *has consented* that plaintiff may institute proceedings in eminent domain to acquire the fee simple title to certain parcels of real estate which plaintiff then proposes to sell in fee simple to a private enterprise or urban redevelopment corporation for redevelopment; (c) that defendant *is in doubt* as to whether plaintiff can and will obtain title in fee simple to said real estate or whether any residuary interests would remain in the City after acquisition of said real estate; and (d) that *by reason of said doubt* the City and all other owners of real estate within the area are entitled to a determination of these considerations by this court.

Thus the pleadings of plaintiff and the City reveal that both are mutually desirous of consummating the redevelopment plans as contemplated for Project Area "A" in the Cooperation Agreement and are desirous of obtaining what is in effect a purely advisory opinion as to whether their acts could be successfully challenged by an adversely interested third person, such as a property owner within the area whose land may be sought to be taken by eminent domain, or by a taxpaying citizen whose property may be subject to a tax lien for bonds, or by other interested third persons. Quite definitely there is no actual controversy existing between the plaintiff and the City as adverse parties in fact.

The answer of the intervenor Mesco Realty Co., Inc., after admitting in substance the facts as pleaded in the petition, also denies the constitutionality of the Cooperation Agreement in the several respects hereinafter mentioned. Here is an actual existing controversy between adverse parties. But, in this connection, it must also be noted that § 527.110 of the Declaratory Judgments Act provides that no declaration shall prejudice the rights of persons not parties to the proceedings and that if a statute, ordinance or franchise is alleged to be unconstitutional, the Attorney General of the State shall also be served with a copy of the proceeding and be entitled to be heard. The record is silent as to any notice having been given to the Attorney General, although the constitutionality of the Land Clearance for Redevelopment Law and one section of the Urban Redevelopment Corporation Law are here challenged. The salutary purpose of that provision is self-evident and is especially applicable under the instant facts.

According to the weight of authority, the statutory requirement that the Attorney General be served with notice in cases challenging the constitutionality of a statute and brought under the Declaratory Judgments Act is mandatory. 9 Uniform Laws Annotated, Declaratory Judgments Act, § 11, page 349, and cases cited under Note 7, page 353. Certainly no judgment rendered herein would be binding upon the Attorney General or any other interested person not made a party herein. Section 527.110 RSMO 1949, V.A.M.S. In the case of Liberty Mutual Ins. Co. v. Jones, 344 Mo. 932, 130 S.W.2d 945, 953, 125 A.L.R. 1149, we held that a failure to make the Attorney General *a party* to an action such as is in this case presented would be deemed as waived in the absence of a demurrer. But we did not hold that a failure to serve him with notice (which was done in that case), as required by the Declaratory Judgments Act, would also be deemed waived in the absence of objection by way of demurrer or motion to dismiss; and it may be, but we do not here decide, that a party adversely affected by a declaratory judgment in which action the constitutionality of a statute was alleged could raise the point at any stage of the proceedings.

The case of St. Louis Housing Authority v. City of St. Louis, 361 Mo. 1170, 239 S.W.2d 289, presented issues and facts very similar to those presented in this case. In that case, as here, neither of the parties, whose interests were, as here,

mutual rather than adverse, directed the attention of the court to the fact that the questions there presented called for an advisory opinion rather than an adjudication of an existing justiciable controversy. This resulted in our determining the questions there presented upon the assumption that a justiciable controversy existed. But it is obvious that when brought to the attention of the court, either by the parties or upon the court's independent investigation of the record, that the pleadings in an action brought under the Declaratory Judgments Act do not present a justiciable controversy, the court should decline to adjudicate the matter. Otherwise, the Act will not be employed solely to serve its true and limited purpose and intent. However, inasmuch as none of the parties has raised any objection to the failure to serve the Attorney General with notice of this action, we will determine the issues presented by the intervenor as between it and the plaintiff and the City.

■ Intervenor contends that §§ 99.320 (12) (c), 99.420 and 99.450 of the Land Clearance for Redevelopment Law are unconstitutional because they permit the taking of private property for private use without the consent of the owner in violation of Article I, § 28, of the Constitution of Missouri. In the case of State of Missouri on Information of Dalton, Attorney General v. Land Clearance for Redevelopment Authority of Kansas City, Mo.Sup., 270 S.W.2d 44, we considered this contention at length and there held that the aforesaid sections of the Law could not be construed as the taking of private property for private use in violation of Article I, § 28, when considered in connection with Article VI, § 21 of the Constitution.

■ We also said in that case: "We hold that Article I, § 28, and Article VI, § 21, considered together and in the light of the above cited cases, mean that final determination of the question whether the contemplated use of any property sought to be taken under the Law here in question is public rests upon the courts, but that a legislative finding under said law that a blighted or insanitary area exists and that the legislative agency proposes to take the property therein under the processes of eminent domain for the purpose of clearance and improvement and subsequent sale upon such terms and restrictions as it may deem in the public interest will be accepted by the courts as conclusive evidence that the contemplated use thereof is public, unless it further appears upon allegation and clear proof that the legislative finding was arbitrary or was induced by fraud, collusion or bad faith."

■ Intervenor further contends that since "the land in the project area will be acquired eventually by private interests, Section 99.580 of the Land Clearance for Redevelopment Law, R.S.Mo.1951, is unconstitutional because this section authorizes the defendant to aid and cooperate with plaintiff and to lend, grant and contribute funds to plaintiff in violation of Section 23 and Section 25 of Article VI of the Constitution of Missouri, which forbids the granting of public money or thing of value and the lending of credit by a city to a private person, association or corporation. The Cooperation Agreement is void for the same reason." In the recent aforesaid case we considered a like contention and there held that § 99.450(1) did not offend against Article VI, §§ 23 and 25 (and Article III, §§ 38(a) and 39) of the Constitution. For the reasons there set forth, we also hold that § 99.580 does not offend against Article VI, §§ 23 and 25.

Intervenor further contends that since "the land in the project area will be acquired eventually by private interests, Section 353.110, RSMo.1951, which undertakes to grant a tax exemption to a private urban redevelopment corporation on land bought by it from the plaintiff, is void because said Section violates Section 6 of Article X of the Constitution of Missouri, which declares void all laws exempting from taxation property other than property enumerated therein. Section 7 of Article X of the Constitution of Missouri, which provides that for the purpose of reconstruction, redevelopment and re-

habilitation of obsolete, decadent and blighted areas the General Assembly by general law may provide partial relief from taxation, does not save Section 353.110, RS Mo.1951, because said Section 7 contemplates partial relief from taxation only when the purpose of urban redevelopment is a public one."

Article X, § 6, declares that certain property therein described shall be exempt from taxation, and that "All laws exempting from taxation property other than the property *enumerated in this article,* shall be void." (Emphasis ours.) Section 7 of said Article provides: "For the purpose of encouraging forestry when lands are devoted exclusively to such purpose, and the reconstruction, redevelopment and rehabilitation of obsolete, decadent or blighted areas, the general assembly by general law, may provide for such partial relief from taxation of the lands devoted to any such purpose, and of the improvements thereon, by such method or methods, for such period or periods of time, not exceeding twenty-five years in any instance, and upon such terms, conditions, and restrictions as it may prescribe."

In the aforesaid recently decided case, we held that the acquisition of property, either by purchase or by eminent domain, and the subsequent resale thereof to a private redeveloper upon such restrictions as the Authority (plaintiff herein) deemed in the public interest constituted a public as distinguished from a private use. We now hold that the provisions of § 353.110 are expressly authorized by Article X, § 7, and do not conflict with Article X, § 6.

A careful examination of the decree in its entirety shows that it declares the proceedings herein undertaken and contemplated by plaintiff and the City to be valid and legal in every respect herein contended. In the aforesaid recently decided case, we held the Land Clearance for Redevelopment Law, and the proceedings taken and contemplated by the City of Kansas City and its co-defendant Land Clearance for Redevelopment Authority, in a project sim-

ilar in all of its material aspects to the project here under consideration, to be constitutional on substantially every ground here advanced by either of the parties in the instant case. The decree, in the instant case, viewed in the light of the extended consideration given to the questions presented in the aforesaid recently decided case and as construed herein, should be affirmed.

It is so ordered.

All concur, except TIPTON, J., not sitting.