**Don P. MOSCHENROSS, et al.,**
**Plaintiffs/Respondents,**

v.

**ST. LOUIS COUNTY, Missouri,**
**Defendant/Respondent,**

and

**Jeanette Mott Oxford, et al.,**
**Defendants/Appellants.**

**No. ED 86135.**

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 17, 2006.

Application for Transfer to Supreme Court
Denied March 9, 2006.

Application for Transfer Denied
May 2, 2006.

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

**16**

Alan E. Popkin, Husch & Eppenberger, Edwin L. Noel, Armstrong Teasdale, St. Louis, Patricia Redington, Clayton, for respondent.

Christine F. Hart, Kennedy and Hawkins, St. Louis, for appellant.

Before MARY K. HOFF, P.J., CLIFFORD H. AHRENS, J., and PATRICIA L. COHEN, J.

PER CURIAM.

Jeanette Mott Oxford and Fred W. Lindecke [1] ("coalition defendants") appeal the judgment of the trial court in favor of Don P. Moschenross, UMB Bank, N.A., Missouri Development Finance Board, Regional Conventions and Visitors Commission, and Land Clearance for Redevelopment Authority of the City of St. Louis (collectively referred to herein as "plaintiffs") and denying the coalition defendants' cross-claim against St. Louis County ("the county"). The judgment granted plaintiffs' petition for declaratory judgment, and found that the application of an amendment to the county charter to the county's agreement to request appropriations to repay bond debt would unconstitutionally impair the contractual rights and obligations of the parties. The coalition defendants argue that the trial court erred in its judgment because there was no impairment of contractual rights, and the financing agreement at issue was illegal and void. They also claim the trial

_____

1. Both individual defendants were named as representatives of The Coalition Against Public Funding for Stadiums ("Coalition").

court erred in denying their motion to dismiss because there was no justiciable controversy. The coalition defendants assert error in the trial court's failure to dismiss plaintiffs' suit because it targeted the exercise of their First Amendment rights. They also claim the trial court erred in granting the motion to dismiss their counterclaim for damages caused by the filing of a strategic lawsuit against public policy. Finally, the coalition defendants claim the trial court erred in entering judgment in favor of plaintiffs because they did not join an indispensable party, and therefore the court was without jurisdiction. Finding no error, we affirm.

The underlying facts of this case involve the development and financing of a new stadium suited for major league baseball, and intended to be the home of the St. Louis Cardinals ("the ballpark"), as well as the development of certain facilities adjacent to the ballpark ("the ballpark project"). In 2002, the Board of Alderman of the City of St. Louis, through ordinance number 65668, approved a redevelopment plan for the area to build the ballpark and surrounding facilities. This ordinance provided that the Land Clearance for Redevelopment Authority of the City of St. Louis ("LCRA") was to undertake the development as a land clearance project, and the area was to be redeveloped. Ultimately, as part of the financing for the project, a Project Financing, Construction, and Operation Agreement ("financing agreement") was entered into between the Missouri Development Finance Board ("MDFB") and St. Louis County. Pursuant to the agreement, MDFB agreed to issue $46,255,000.00 in bonds. The county agreed to include a request for annual appropriation of amounts to finance the

bonds in the annual budget proposals submitted to the county council during the term of the agreement. Pursuant to the financing agreement, the county stated its expectation was to make such payments from revenues collected from the sports and entertainment tax[2]. The county adopted ordinance number 21,644,2003 ("the ordinance") which authorized the county's participation in the financing agreement. The county also entered into a Cooperation Agreement with the LCRA and MDFB regarding the sale of the bonds.

On December 23, 2003, a Trust Indenture was executed between MDFB and UMB Bank, N.A. ("UMB"). Pursuant to the Trust Indenture, the bonds were issued, and the proceeds were provided to the LCRA to be used to finance a portion of the cost of the development of the ballpark project. The LCRA loaned the bond proceeds to Cardinals Ballpark, L.L.C. ("team owner"). The team owner then escrowed the funds for construction of the ballpark.

After this financing scheme was in place, the Coalition Against Public Funding for Stadiums filed signatures with the County Board of Election Commissioners proposing an amendment to the county charter. Proposition A, the proposed amendment, was placed on the November 2, 2004, ballot. Proposition A posed the question:

Shall the St. Louis County Charter be amended so that any County assistance of value, whether direct or indirect, to development of a professional sports facility, requires prior to any assistance being given that the County Auditor first prepare a fiscal note and that the governing body proposing to take action to provide financial assistance hold a

---

2. Pursuant to section 67.650 RSMo (1988), in 1989, voters approved a three and a half percent sales tax on hotel and motel guests for the purpose of supporting the activities of the Regional Convention and Visitors Convention.

public hearing and that the financial assistance be approved by a majority of the qualified voters of the County voting thereon?

Proposition A passed, and the election results were certified on November 16, 2004.

Plaintiffs filed suit against the coalition defendants and the county on November 17, 2004, seeking a declaratory judgment and injunctive relief. Plaintiffs sought a declaration that Proposition A did not invalidate the rights and obligations created under the provisions of the ordinance approving the county's participation in the financing agreement, the Cooperation Agreement, the project agreement or the bonds. They also claimed Proposition A was unconstitutional. The coalition defendants subsequently moved to dismiss the petition for failure to state a claim. They alleged several grounds for dismissal, including lack of standing, lack of justiciable controversy, that the suit constituted a strategic lawsuit against public policy, the financing agreement was unconstitutional, the Cooperation Agreement was invalid, and that plaintiffs failed to state facts showing they were entitled to relief. The coalition defendants also filed a cross-claim against the county. In their cross-claim, they sought a judgment declaring the financing agreement and ordinance illegal and void and declaring Proposition A legal and valid. They also requested injunctive relief to prevent the county from refusing to follow Proposition A. Additionally, the coalition defendants filed a counterclaim against the LCRA. They also filed a counterclaim against all plaintiffs alleging a violation of their First Amendment rights as a result of the filing of a strategic lawsuit against public policy. The coalition defendants' counterclaim against LCRA and their counterclaim against all plaintiffs were dismissed by the trial court. The

trial court also dismissed the petition as to the coalition defendants. The cause proceeded to trial on plaintiffs' declaratory judgment and injunctive relief claims against the county, and the coalition defendant's cross-claim against the county. Stipulations of fact and exhibits were provided to the trial court, and testimony was also presented at trial. The court entered a judgment in favor of plaintiffs on their petition for declaratory judgment and injunctive relief against the county. The court denied the coalition defendants' motion to dismiss. The court also denied the first amended cross-claim of the coalition defendants against the county as moot. The present appeal followed.

We will affirm the judgment in a court-tried case unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously applies or declares the law. *Roeder v. Ferrell–Duncan Clinic, Inc.*, 155 S.W.3d 76, 79 (Mo.App.2004) (citations omitted). "A judgment is presumed correct, and the appellant has the burden of proving it erroneous." *Id.* The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the judgment, and all contrary evidence and inferences are disregarded. *Id.*

In their first two points on appeal, the coalition defendants claim the trial court erred in entering judgment in favor of plaintiffs, and denying the coalition defendants first amended cross-claim against the county. The basis for the coalition defendants' claim of error in these points focuses on the impairment of the right to contract. The coalition defendants argue in both points that there was no impairment of contractual rights as a result of the application of Proposition A.

Pursuant to Article I, Section 13 of the Missouri Constitution, "no ex post facto law, nor law impairing the obligation of

contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be enacted."

The court noted that Proposition A could not be construed to effect a retroactive invalidation of these documents because it would result in an unconstitutional impairment to the contractual obligations of the plaintiffs. However, the trial court did not find that Proposition A operated retrospectively. Instead, the court found that Proposition A operated prospectively only, if at all[3]. Thus, the court found that Proposition A did not impact the provisions of the ordinance, cooperation agreement, project agreement or the bonds. Moreover, the coalition defendants themselves argue that Proposition A does not operate retroactively by its plain language.

Proposition A provides that "before" the county can provide financial assistance to the development of a professional sports facility, there must be a fiscal note prepared and made available to the public, a public hearing, and approval from the majority of qualified voters of the county. Clearly, this language requires that these conditions occur prior to the county's provision of financial assistance to develop any professional sports facility. The trial court determined that the financial assistance for the development of the ballpark project was provided on December 23, 2003, when the loan was funded and the proceeds were placed in escrow for construction. This finding is supported by the evidence.

Proposition A defines "financial assistance" as including, "any [c]ounty assistance of value, direct or indirect, whether or not channeled through an intermediary entity, including but not limited to ... issuance, authorization, or guarantee of bonds; ... deferral, payment, assumption or guarantee of obligations, and all other

forms of assistance of value." Here, the bonds were issued as of December 23, 2003, and the proceeds of those bonds were deposited in escrow to be used for construction. Additionally, the county assumed the "obligation" to request annual appropriations for repayment of the bonds, subject to the approval of the county council, by enacting the ordinance, and by executing the financing agreement and cooperation agreement, all of which were completed before December 23, 2003. Thus, the court did not err in its conclusion that the "financial assistance" from the county for the development of the ballpark project was provided as of December 23, 2003.

Proposition A did not become effective until November 16, 2004, when the results of the election were certified, almost eleven months after the financial assistance was provided. This only serves as support for the trial court's conclusion that Proposition A operates only prospectively, if at all, and it does not invalidate the provisions of the various agreements and ordinance authorizing the county's participation in the financing. The trial court also concluded that applying Proposition A to allow the voters to alter the provisions of the appropriations-based financing *after* the execution of the agreement and the provision of financial assistance would result in an unconstitutional impairment of the obligations and rights of the parties to the financing agreement, the cooperation agreement, and the ordinance, in violation of Article I, Section 13 of the Missouri Constitution. However, because the trial court found that Proposition A operates prospectively only, and this finding was not in error, we do not need to reach the coalition defendants' arguments regarding

---

**3.** The trial court declined to make a determination as to whether Proposition A as enacted is constitutional, and we also decline to make such a determination.

the potential impairment of contractual rights from the retrospective application of Proposition A to the financing agreement, cooperation agreement, and the ordinance.

■ In addition to their arguments in points one and two regarding the impairment of the contractual rights of the parties, the coalition defendants also claim that the individual parties cannot contract away the right of the people to legislate through the initiative process. However, the right of the people has not been contracted away. The trial court's finding that Proposition A operates prospectively only, if at all, clearly does not preclude the potential prospective application of the limitations on county financial assistance to future developments of professional sports facilities. Therefore, the rights of the people to legislate using the initiative process have not been impaired by the trial court's decision.

The coalition defendants also claim that the bondholders assumed the risk that the appropriations would not be made and Proposition A would pass. However, as previously discussed, despite this notice to the bondholders, Proposition A operates prospectively only, and therefore, cannot be applied to retroactively invalidate the bonds.

For the foregoing reasons, the court did not erroneously apply the law to the facts of this case. Points one and two are denied.

■ The coalition defendants assert, in their third and fourth points on appeal, that the county's agreement to make payments on the bonds was unconstitutional.

In their third point, the coalition defendants argue that if the financing was consummated prior to the passage of Proposition A, then the county's agreement to make the bond payment over thirty years violated the limitation contained in Article VI, section 26(f) of the constitution, which limits debt to twenty years. They cite an "inherent contradiction" in the trial court's judgment, claiming that the trial court refused to call the county's obligation "debt," for purposes of the constitution but treated it as debt in every other respect. This argument is meritless.

Article VI, Section 26(f) of the Missouri Constitution states that:

Before incurring any indebtedness every county, city, incorporated town or village, school district, or other political corporation or subdivision of the state shall provide for the collection of an annual tax on all taxable tangible property therein sufficient to pay the interest and principal of the indebtedness as they fall due, and to retire the same within twenty years from the date contracted.

■ The coalition defendants erroneously base their claim on the premise that the county's obligation was "indebtedness" which would be subject to the limitations contained in Article VI, Section 26(f). Debt has been defined as an unconditional promise to pay a fixed sum at a specified time. *Drury v. City of Cape Girardeau*, 66 S.W.3d 733, 740 (Mo. banc 2002). The agreement in the present case was merely to request annual appropriations for repayment of the bonds, subject to the approval of the county council. Therefore, the performance of the contract depends upon action by the county council before any unconditional indebtedness arises. This is distinguishable from an absolute agreement to incur debt, which has been determined to violate the debt-limitation provisions of Article VI, section 26 of the constitution. *New Liberty Medical & Hospital Corp. v. E.F. Hutton & Co.*, 474 S.W.2d 1 (Mo. banc 1971). Thus, the financing agreement in the instant case did

not result in a "debt" incurred by the county longer than twenty years.

■ Moreover, as the coalition defendants note, it has been determined that Article VI, section 26(f) applies only to general obligation bonds. *Spradlin v. City of Fulton*, 924 S.W.2d 259, 264 (Mo. banc 1996). Michael Lause, an expert on public finance, testified at trial. He had worked on a number of bond issues. Lause discussed several different types of bonds categorized by the type of credit or revenue source behind the bonds. He defined the bonds at issue in the present case as annual appropriations bonds, not general obligation bonds. Therefore, the provisions of Article VI, section 26(f) would not apply to the bonds at issue in the present case regardless of whether the county's obligation could be considered "debt."

The court's finding that the financial assistance for the development of the ballpark project was provided on December 23, 2003, prior to the enactment of Proposition A, is not contradictory to the determination that the county did not agree to incur a "debt" for longer than twenty years. As previously noted, the parties contracted for annual appropriations requests subject only to the county council's approval, which was not considered "debt" for purposes of Article VI, section 26(f).

Proposition A separately defined the term "financial assistance." As previously discussed, this definition included the issuance or guarantee of bonds, and the assumption of obligations by the county. The bonds were issued well before the enactment of Proposition A, and the county assumed the obligation to request annual appropriations to repay the bonds prior to Proposition A's enactment. Thus, the court's determination that the "financial assistance" was already provided, prior to the enactment of Proposition A, does not contradict a finding that this "financial as-

sistance" was not "debt" for purposes of Article VI, section 26(f). Point denied.

■ In their fourth point on appeal, the coalition defendants argue that the county's agreement to make the bond payments with public money violated the constitutional prohibition against the grant of a county's credit and public money to aid a private entity.

Article VI, Section 23 of the Missouri Constitution states that no county shall "lend its credit or grant public money or thing of value to or in aid of any corporation, association or individual. . . ." The coalition defendants claim that the eventual owner of the ballpark is Cardinals Ballpark, L.L.C., a subsidiary of the team owners. They argue that the LCRA, which was to receive the funds from the bonds, served merely as a "conduit" for the funds. Therefore, the coalition defendants claim the county's credit was granted to aid the team owners, a private entity or individual, and any public benefit from the development of the ballpark would be incidental.

■ As plaintiffs note in their brief, a similar argument was presented in *Rice v. Ashcroft*, 831 S.W.2d 206 (Mo.App.1991). In *Rice*, the court considered claims made by a group of taxpayers regarding the participation of St. Louis County and the City of St. Louis in the financing of what is now known as the Edward Jones Dome. Although the underlying financing scheme considered in *Rice* was somewhat distinct, the court was faced with the question of a grant of money or credit to private persons or corporations. The court dealt with an analogous portion of the constitution which prohibited the general assembly from lending credit or granting money to private individuals or corporations. The court found that in determining whether there is sufficient public purpose behind

the grant of public money to render such a grant constitutional, Missouri uses the "primary effect" test. *Id.* at 209. If the primary intent of the public expenditure is to serve a public purpose, the expenditure will be considered legal. *Id.; (quoting Curchin v. Missouri Industrial Development Board,* 722 S.W.2d 930 (Mo. banc 1987)). If the primary purpose is to promote a private end, the expense will be considered illegal, even if it may incidentally serve some public interest. *Id.* The court in *Rice* concluded that any benefit to private persons from the participation of the county and city in the financing of what is now known as the Edward Jones Dome would be incidental. *Id.* at 210. These incidental private benefits did not take away from the primary purpose of the participation of the county and city in the financing, which was to increase convention and sports activity in the areas. *Id.;* (citations omitted).

In the present case, the proceeds from the issuance of the bonds were ultimately loaned to Cardinals Ballpark, L.L.C. for development of the ballpark project. Although the team owners will incidentally benefit from the development of the ballpark itself, the project extends further than simply the ballpark. Certain mixed-use facilities are to be developed adjacent to the ballpark. A document was submitted to the court as an attachment to the ordinance, which provided economic and tax revenue projections for the county from the development of the ballpark project, which included both the ballpark and the surrounding facilities. It was anticipated that the spending for the ballpark project would result in the generation of "direct and indirect economic impacts" as money is spent as a result throughout the region, including the county. The projections estimated the addition of jobs for county residents in permanent positions within the ballpark project and in con-struction and related jobs. The county economy, and the personal income of its residents also stood to benefit from the development of the ballpark project. Therefore, as the court found in *Rice,* the primary purpose of the development at issue in the present case is to increase convention and sports activity in the county and city, thereby resulting in economic benefits to the public. Thus, the county's agreement did not violate Article VI, Section 23 of the constitution. As a result, the trial court did not misapply the law in denying the coalition defendants cross-claim. Point denied.

■ The coalition defendants' fifth point on appeal asserts error in the trial court's decision to deny the coalition defendants' motion to dismiss for lack of justiciable controversy.

■ In order to maintain an action for declaratory judgment, a party must demonstrate a justiciable controversy for which there is no adequate remedy at law. *Levinson v. State,* 104 S.W.3d 409, 411 (Mo. banc 2003) (citation omitted). "A justiciable controversy exists where the plaintiff has a legally protectible interest at stake, a substantial controversy exists between parties with genuinely adverse interests, and that controversy is ripe for judicial determination." *Id.*

The coalition defendants argue that the county was not a true adversary to plaintiffs since they shared a mutuality of interest in effectuating the county's commitment to make the bond payments. They cite *Land Clearance for Redevelopment Authority of City of St. Louis v. City of St. Louis,* 270 S.W.2d 58 (Mo. banc 1954), and *Wentzville Public School Dist. v. Paulson,* 699 S.W.2d 132 (Mo.App.1985), to support their claim. However, both cases are distinguishable from the present case.

In *City of St. Louis,* the Land Clearance for Redevelopment Authority of the City of St. Louis filed suit against the city seeking a declaratory judgment construing an agreement entered into between the parties for redevelopment of an area, and seeking a declaration of the validity of the ordinances and statutes upon which the agreement depended. The city admitted the allegations in the petition, and the court found that the pleadings of the parties revealed that they were both "mutually desirous of consummating the redevelopment plans" contemplated by the parties. 270 S.W.2d at 63. The court concluded that there was no actual controversy existing between plaintiff and the city. *Id.*

In the present case, the county did not admit all the allegations in the petition. The coalition defendants argue that the county "technically" denied certain allegations, but did not "flatly" deny any allegation. We do not believe this distinction is persuasive. Unlike the defendant in *City of St. Louis,* the county in the present case did deny several allegations of the petition based upon lack of knowledge, and on the grounds that the claims constituted legal conclusions. Specifically, the county denied the plaintiffs' claims that Proposition A did not apply to the request for annual appropriations for the repayment of bonds for the ballpark project, and the county denied the claim that the application of Proposition A to the agreements at issue would result in the substantial impairment of the contractual rights and obligations of the parties. Additionally, the county denied the allegation that Proposition A was unconstitutional. These were the substantive allegations of plaintiffs' claims. Unlike the defendant in *City of St. Louis,* by refusing to admit these allegations, the county evidenced its adversarial position to plaintiffs' claims.

The coalition defendants also rely upon *Wentzville Public School Dist. v. Paulson.* In *Paulson,* a teacher employed by the Wentzville Public School District sought to have his non-resident child enrolled in the school. A statute allowed the school board the discretion to admit non-resident pupils and prescribe tuition. Another statute prohibited the school board from receiving money from any teacher employed by the district for tuition. The school district declined to enroll the child and filed suit seeking a declaration as to whether the statute prohibiting receipt of tuition from teachers within the district applied if the district admitted the teacher's non-resident child. The district also asked the court to determine the constitutionality of the statute. The teacher filed a letter with the court as an answer to the school district's petition asking for a declaratory judgment as to the statutes, "to see which apply and which don't." The court found that no bona fide controversy existed because the parties simply asked for an interpretation of a statute. 699 S.W.2d at 134.

The present case is distinguishable. The coalition defendants claim that as in *Paulson,* here, the county and plaintiffs both sought the same result, which was for the court to find that the county was to perform their obligations without voter approval. However, the coalition defendants fail to acknowledge the trial testimony of James Baker, the Director of Administration for the county. He stated that while he was sworn to attempt to enforce the contracts entered into by the county, he was also obligated to follow the county charter, and any amendments thereto, including Proposition A. This testimony contradicts the coalition defendants' argument that the county's position was that it would effectuate the county's bond repayment obligations in concert with plaintiffs. Instead, although the county intended to

enforce the contractual obligations, the county also clearly intended to attempt to follow Proposition A even if it applied to the financing agreement for the ballpark project. As such, the county stood in an adversarial position to plaintiffs.

As a result of the foregoing, a justiciable controversy does exist between the county and plaintiffs. Therefore, the trial court did not err in denying the coalition defendants' motion to dismiss the petition. Point denied.

■ The coalition defendants' sixth point on appeal claims that the trial court erred in failing to dismiss plaintiffs' suit on the basis that it targeted the coalition defendants' exercise of their First Amendment[4] rights to use the initiative process and to speak publicly about the county's provision of financial assistance to the ballpark project without voter approval. However, the coalition defendants provide us with no authority to support the conclusion that the declaratory judgment action, seeking to define the rights and obligations of the parties in light of the passage of Proposition A, constituted an improper impairment to their First Amendment rights. We do not believe such a conclusion is warranted here.

The decision of plaintiffs to file an action to clarify the rights and obligations of the parties occurred after the coalition defendants sought signatures to place the initiative on the ballot, after they successfully placed Proposition A on the ballot, and after Proposition A was passed. The suit did not, therefore, result in any impairment to the coalition defendants' exercise of their first amendment rights. Thus, the trial court did not err in refusing to dismiss the action on those grounds.

■ They also claim the trial court erred in granting the plaintiffs' motion to dismiss the coalition defendants' counterclaim alleging that plaintiffs filed a strategic lawsuit against public policy.

The Missouri legislature enacted section 537.528 RSMo (Cum.Supp.2004) to address "strategic lawsuits against public policy" ("SLAPP"). Pursuant to the statute, an action seeking money damages against a person for conduct or speech occurring in connection with a public hearing or meeting is subject to special motions to dismiss, for judgment on the pleadings or for summary judgment, and these motions are to be considered on a priority or expedited basis by the court to prevent the expense of litigation.

The coalition defendants cite several cases from other jurisdictions regarding SLAPPs; however, they do not provide Missouri authority on the subject. Instead, they argue that the anti-SLAPP statute, section 537.528, was "presumably too narrowly written" to apply to the plaintiffs' suit against them. While they acknowledge that section 537.528 effectively limits relief to actions seeking money damages, and plaintiffs in the present case did not seek any money damages in their action for declaratory judgment action, the coalition defendant still argue that the action should have been dismissed as a SLAPP.

■ SLAPPs have been defined as suits brought primarily in retaliation for activity in opposition to the interests of the plaintiff. *State ex rel. Diehl v. Kintz*, 162 S.W.3d 152, 157 (Mo.App.2005) (citation omitted). The coalition defendants claim that plaintiffs' petition demonstrates the SLAPP nature of the action, in that it

**4.** The First Amendment to the United States Constitution provides, in relevant part, that, "Congress shall make no law ... abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble ..."

was filed by proponents of the ballpark development against the leading critics and organizers of a movement to limit the county's funding of the project. Their argument fails.

The Coalition Against Public Funding for Stadiums ("Coalition") sought signatures, obtained them, placed Proposition A on the county ballot, and it was passed by a majority of the voters. Plaintiffs filed suit to clarify the rights and obligations of the parties in light of the amendment to the county charter. As noted by plaintiffs, the coalition defendants assert the SLAPP claim on appeal as individuals; however, they were not named in the petition as individuals but instead as representatives of the Coalition. As representatives of the Coalition, the coalition defendants also had an interest in the determination of Proposition A's effect on the financing agreement, cooperative agreement, and ordinance. It is a reasonable conclusion that plaintiffs properly joined the coalition defendants to further this interest, rather than as retaliation for their actions. Based upon the record before us, we cannot conclude that this suit was brought in retaliation for any actions of the coalition defendants. Therefore, the trial court did not err in failing to dismiss the action as a SLAPP. Point denied.

Finally, in their seventh point on appeal, the coalition defendants assert error in the trial court's judgment in favor of plaintiffs because the plaintiffs failed to join the owners of the Cardinals as an indispensable party, and therefore, the trial court was without jurisdiction.

 Section 527.110 RSMo (2000), and Missouri Supreme Court Rule 87.04, provide that, "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of

persons not parties to the proceedings." It has been determined that an "interest" which compels joinder is not one which is merely consequential, remote or a conjectural possibility of being somehow affected by the result of an action. *Harris v. Union Elec. Co.*, 622 S.W.2d 239, 245 (Mo. App.1981) (citation omitted). The interest at issue must be a direct claim upon the subject of the action such that the joined party will either gain or lose by direct operation of the judgment rendered. *Id.*

 In the present case, the coalition defendants argue that by the terms of several documents executed by the team owners, the team owners are obligated to repay the amount of the bond proceeds with interest. The coalition defendants claim that regardless of whether these documents result in an obligation of the team owners to make payments to the bondholders, or they result in the mere opportunity of the team owners to do so, the team owners have an interest which would be affected by the judgment. However, this is speculation as to the interest of the team owners, and any effect of the judgment upon them is remote.

The subject of the judgment is the application of Proposition A to the financing agreement, cooperative agreement, and ordinance. The team owners were not parties to these agreements. The judgment does not purport to determine any obligation or right of the team owners with respect to the financing scheme entered into by the county. It does not consider the validity or implication of the documents executed by the team owners, nor does it consider their obligations thereunder. Their liability is not the subject matter of the action, and it is not settled by the judgment. Therefore, their interest is not one which compels joinder. Thus, the trial court had jurisdiction, and did not err

in entering judgment in favor of plaintiffs on their petition. Point denied.

The judgment of the trial court is affirmed [5].

---

5. The coalition defendants' motion for costs and attorneys' fees is denied.