**DOLPHIN CAPITAL CORPORATION,**
Appellant,

v.

Stephen R. SCHROEDER, Complete Vending Services, Inc. et al, Alief Electro Mechanical Inc., et al Martin Furniture Co. of Gainsville, et al., Defendants,

Bodgan Zielinski d/b/a B&K Precision Company, Romac Industrial Parts, Inc. et al, OAC Action Construction, Inc., et al, Winston Yacht Club, Inc., and Stephen R. Corbett, Cooke & Associates, Inc., et al, Sincere Orient Commercial Corporation, Respondents.

Nos. WD 66298 WD 66300, WD 66301, WD 66304, WD 66305, WD 66307, WD 66308.

Missouri Court of Appeals, Western District.

March 11, 2008.

Wayne E. Schirmer, Esq., Moberly, MO, for Dolphin Capital Corporation.

Karl W. Dickhaus, Esq., St. Louis, MO, for respondents.

Before HOLLIGER, P.J., LOWENSTEIN and SMART, JJ.

HAROLD L. LOWENSTEIN, Judge.

## I. OVERVIEW

This appeal arises from the grant of a motion to dismiss for failure to join a necessary and indispensable party pursuant to Rule 52.04.[1] The suits below, consolidated for purposes of appeal, involve collections actions by a leasing company, Dolphin Capital ("Dolphin" or "Appellant"), against seven out-of-state defendants ("Renters" or "Respondents"). The Respondents all signed equipment rental agreements ("ERAs") with a New Jersey Corporation, NorVergence. NorVergence marketed to small companies, municipalities, non-profits, and churches, a piece of proprietary telecommunications equipment, the "Matrix,"[2] which, NorVergence claimed, could consolidate and reduce a customer's telephone, internet, and wireless communications expense. The rental agreements were signed by the customers and a NorVergence representative. After securing a signed ERA from the customer, NorVergence would immediately assign the ERA to a leasing company, here, Dolphin Capital, a Massachusetts corporation doing business in Moberly Missouri. The leases were for a term of five years.

The customers soon found that the equipment was never delivered, never installed, not serviced, defective, functionally valueless, or failed to provide the claimed cost reductions. Indeed, the "Matrix" later proved to be nothing more than a router with a retail value of $1,500 to $3,000. When customers' complaints to the assignee leasing company were unavailing, the customers ceased payment under the ERA. Shortly after the last of the leases involved in this suit was signed, NorVergence sought bankruptcy protection.

The seven suits involved in this case were brought by the assignee leasing company ("Dolphin") against out-of-state defendants (the "Renters") obligated under the leases, pursuant to a forum selection clause in the ERA. Dolphin sought to collect the balance of payments due under the ERA. The Renters answered and counterclaimed, then filed a motion to dismiss for

---

1. Rule 52.04(a) sets forth who is a necessary party to an action: "A party shall be joined in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."

 Rule 52.04(b) addresses the court's choices where joinder is not feasible. If joinder of a necessary party under Rule 52.04(a) is infeasible, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it or should be dismissed, the absent party being thus regarded as indispensable." To that end, the court must consider: "(i) to what extent a judgment rendered in the person's absence might be prejudicial to that person or those already parties; (ii) the extent to which by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (iii) whether a judgment rendered in the person's absence will be adequate; and (iv) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

2. The "Matrix" has since been determined to be a common router with a retail value of $1,500 to $3,000. Dolphin seeks to recover $114,799.10, plus interests, costs, and attorneys' fees, on the rental of the seven Matrix boxes.

failure to join an indispensable party, the original lessor, NorVergence. The trial court granted the motion to dismiss, this appeal followed.

## II. FACTS

This appeal is taken by Dolphin from the judgment of the Circuit Court of Randolph County dismissing its petitions for damages from a breach of contract against seven defendants each of whom had each leased, for a term of five years, a Matrix box, from NorVergence. The ERAs involved in this case were signed between September 2003 and January 2004.[3]

Between 2002 and 2004, NorVergence marketed the Matrix boxes claiming the equipment could integrate and provide telephone, wireless, and Internet service, resulting in a reduction of the user's telecommunications expense by up to thirty percent. The Renters signed an "Equipment Rental Agreement," agreeing to rent the Matrix for a term of five years. Here, the monthly rentals ran between $191.00 and $510.00. In six-point type on the reverse of the printed contract, the ERA provided, in part, that:

> the applicable law governing the agreement shall be that of the state of the principal office of NorVergence, New Jersey;
>
> if the agreement was assigned by NorVergence, the applicable law governing the contract *may* be the state of the assignee's principal office—here, Missouri—or the law of any state the assignee chooses;[4]

NorVergence, with respect to the equipment, "makes no warranty of merchantability" or "fitness for a particular purpose in connection with this agreement;"

NorVergence was not any assignee's agent and no breach by NorVergence will excuse the Renter's obligation to pay any assignee; and

the Renter "hereby waives right to a trial by jury in any lawsuit in any way relating to this rental."

After obtaining a signed ERA, NorVergence would immediately assign the ERA to Dolphin. NorVergence would then send the Renter an *undated* "Notice of Assignment" advising the Renter that the rental agreement had been "transferred" to Dolphin and that "*[a]ll terms and conditions remain unchanged* with exception that *beginning with [the] first rental payment*" the Renter was to send their payments to Dolphin at a post office box in Moberly, Missouri. (Emphasis added).

The assignment from NorVergence to Dolphin was made under a "Master Program Agreement" ("the MPA").[5] The MPA provided that:

> NorVergence assigned to Dolphin all title and interest in the "Rental Agreements (money due) . . . but none of its obligations;"
>
> Dolphin would not conduct a [Renter] interview, "which is contrary to [Dolphin's] standard credit policy;"
>
> Dolphin would not independently confirm delivery of the equipment and "shall not obtain any confirmation of

3. A timeline of events pertinent to this appeal appears *infra.*

4. Such a provision is generally termed a "floating forum selection clause."

5. The MPA provided in the Renters' pleadings was a copy of the agreement between NorVergence and Popular Leasing, a leasing corpo-

ration with its principal office in St. Louis, who, like Dolphin, was an assigned a number of the ERAs between NorVergence and customers located outside of Missouri. The program was somewhat standardized, however, and the MPAs between NorVergence and the leasing companies had similar, if not identical, provisions.

delivery other than the signed Delivery and Acceptance notice provided by Nor-Vergence;"

NorVergence would hold harmless and indemnify Dolphin on any demand made for "the breach of any warranty or representation" contained in the rental agreements or arising from "any breach by NorVergence;"

NorVergence would pay Dolphin the remaining monies due under the lease if any warranty or representation in the MPA was found to be untrue or breached by NorVergence, including the representation that the ERAs were valid, binding, enforceable, and non-cancelable.

NorVergence would repurchase, for the purchase price advanced by assignee, plus interest, a defaulted "Assigned Rental Agreement" in the event of a customer default not cured within thirty days.

### III. TIMELINE

2002 NorVergence initiates its sales drive promising thirty percent cost savings and numerous services to improve Renters' customer relations.

NorVergence and leasing companies/assignees enter in Master Program Agreements.

October 2002 Dolphin institutes the first in a series of collections suits against NorVergence customers in the Circuit Court of Randolph County.

October 2003 to January 2004 NorVergence enters into the seven ERAs, the subject of this suit. The ERAs are immediately assigned to Dolphin.

July 2004 NorVergence seeks bankruptcy protection and ceases to provide any services to Renters.

October 2004 to March 2005 Dolphin institutes collection suits in the Circuit Court of Randolph County to collection the balances due on the leases.[6]

July 2005 The Federal Trade Commission obtains a permanent injunction against NorVergence in the United States District Court for New Jersey for violations of 15 U.S.C. Section 45(a) for, among other reasons, making fraudulent representations as to providing services to customers and improper use of financing agreements. *See F.T.C. v. NorVergence, Inc.*, 2005 WL 3754864 (D.N.J. July 22, 2005).

August 2005 The United States Bankruptcy Court in New Jersey refuses to lift the stay in the NorVergence bankruptcy upon motion to lift by Popular Leasing, a NorVergence assignee, to allow NorVergence to be joined to pending litigation against customers.

### IV. PROCEDURAL POSTURE

Dolphin, the assignee under the MPA for the seven ERAs involved in this suit, instituted collection actions in the Circuit Court of Randolph County against the seven out-of-state entities.[7] Four of the petitions also asserted claims against individuals who had executed personal guaranties on behalf of their businesses. Dolphin sought damages ranging from $11,000 to just under $30,000, the accelerated balance due on the ERAs, plus late charges, interest, costs and of collection, and attorneys' fees. The petitions were all substantially the same, excepting the dates and damages sought.

6. Since 2002, over two hundred collections actions have been instituted by Dolphin in the Circuit Court of Randolph County seeking to collect rents due under NorVergence leases.

7. The defendant-respondents in this case are entities and individuals located in Massachusetts, Maryland, Georgia, Florida, and California.

The Renters' answers were also substantially the same and, in addition to responding to Dolphin's claims, made a number of assertions and counterclaims.

Dolphin knew NorVergence could not provide the promised services because it was in default with necessary suppliers. Dolphin did not answer this assertion.

NorVergence was to provide many services, including "carrier neutral cell phones with unlimited minutes," "Voice Over Internet Protocol," and "800 numbers," none of which were ever supplied. Dolphin claimed it was without sufficient knowledge and denied the charge.

NorVergence terminated whatever services it had provided when it declared bankruptcy. Dolphin admitted this assertion.

The ERAs purported to absolve NorVergence of any responsibility. Dolphin denied this assertion.

NorVergence never delivered the services it promised including unlimited long distance services, nor facilitated in the switching of the Renters' existing telephone service. Dolphin replied it was without sufficient knowledge and denied the assertion.

The ERA was a bait and switch scheme promulgated by NorVergence. The claim was denied by Dolphin.

Dolphin did not perform any of its customary due diligence in acquiring the ERA, which had been procured by fraud in fact, fraud in the inducement, and was a contract of adhesion. Dolphin denied this assertion.

The Renters moved to dismiss the petition on the sole ground that Dolphin had failed to join a necessary and indispensable party, NorVergence. The trial court granted the motion to dismiss. This appeal followed

## V. STANDARD OF REVIEW

This court will "affirm a trial court's decision under Rule 52.04 unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it misinterprets or misapplies the law." *ADP Dealer Services Group v. Carroll Motor Co.,* 195 S.W.3d 1, 9 (Mo.App.2005) (internal citations omitted). "The pleadings are liberally construed and all alleged facts are accepted as true and construed in a light most favorable to the pleader." *Koger v. Hartford Life Ins. Co.,* 28 S.W.3d 405, 409–10 (Mo.App.2000).

## VI. DISCUSSION

 "In determining which parties are required to be before the court, consideration is given . . . to the nature of relief requested and the interests to be adjudicated." *Nachbar v. Duncan,* 114 S.W.3d 421, 424 (Mo.App.2003) (*quoting Clark v. Fitzpatrick,* 801 S.W.2d 426, 429 (Mo.App. 1990)). The Renters contend that NorVergence is an indispensable party pursuant to Rule 52.04 in that complete relief cannot be accorded among the parties and that the Renters are prejudiced in NorVergence's absence.

The Renters have counterclaimed, seeking declaratory judgment that the rental agreements they signed with NorVergence are: (1) *void ab initio* for fraud in factum; (2) void for fraud in the inducement; and/or (3) unenforceable as a contract of adhesion. Renters seek to recover all monies remitted under the ERA. Under the terms of the ERA, the Renters will have no defense unless they can prove fraud by NorVergence, or the unseemly connection between NorVergence and Dolphin, necessarily implicating both in the fraud.

Notably, as to the fraud claim, Dolphin asserts that it is without knowledge or denies any lack of due diligence on its part, despite the terms of the MPA. Indeed the

factual record as to the agreements and the assignments is murky, at best. Without NorVergence, such elemental facts, such as the date of assignment of the ERA, is left to conjecture. The Renters' fraud claim cannot be fully adjudicated in NorVergence's absence. NorVergence's absence is far more prejudicial to the Renters than to Dolphin. Accordingly, NorVergence is a necessary party to the action pursuant to Section 52.04(a).

Regardless, Dolphin would have the action proceed without NorVergence and attempt to enforce collections under the strict wording of the ERAs. That NorVergence cannot be joined in the action is indisputable. NorVergence enjoys the protection of the bankruptcy court that has declined to lift the stay to allow the company to be joined in other similar litigation across the state. However, this stalemate should not provide a safe harbor for Dolphin's effort to rely on the strict wording of the agreement and hail defendants from across the country into a Missouri court, and attempt to defend the collections and bear their burden to show fraud in the absence of the party that set this unusual set of facts into motion.

Rule 52.04(b) requires the court to determine whether, where a necessary party is unreachable, "in equity and good conscience, whether the action should proceed among the parties before it or should be dismissed." A factor in this determination is whether proceeding in the necessary party's absence would result in prejudice to "that person or those already parties." Rule 52.04(b)(i). Here, NorVergence's absence clearly prejudices the Renters who bear a heavy burden to show fraud in factum and fraud in inducement as to the agreements between the Renters and NorVergence.

Dolphin clearly chose to pursue the NorVergence customers, even in the face of immediate, numerous, and persistent complaints from the customers, when, under the MPA, it had clear recourse for recovery against NorVergence. This choice was evidently made early as Dolphin filed its first collection action under a NorVergence ERA as early as October of 2002. Fifty such suits were instituted between October 2002 and July 2004, when NorVergence filed for bankruptcy.

That NorVergence is now in bankruptcy and shielded from financial responsibility should not inure to Dolphin. The language of 52.04(b) speaks of equity and good conscience. Based on the nature of the agreements involved, the course of events, Dolphin's lack of diligence (by agreement with NorVergence), weigh heavily that the actions of Dolphin leave the court with the impression that the trial court's ruling was correct. NorVergence is an indispensable party in deciding this particular collection action. Generally, an original lender is not an indispensable party in a collection action. *See Nachbar v. Duncan,* 114 S.W.3d 421 (Mo.App.2003). Here, however, the allegations of fraud, as well as the disturbing inferences arising from the actions of Dolphin and NorVergence clearly distinguish this case from a garden-variety collections action. That fact that NorVergence cannot be here should be Dolphin's responsibility rather than that of the defendant-respondents.

Here, based upon the clearly establish relationship between NorVergence and the appellant, equity and good conscience demand that, in the absence of NorVergence, the action be dismissed. The judgment is affirmed.

All concur.