

# Missouri Court of Appeals

## Southern District

### Division Two

ROBERTS HOLDINGS, INC., )
)
    Plaintiff-Appellant, )
)
vs. ) No. SD32757
)
BECCA'S BARKERY, INC., ) **Filed: March 13, 2014**
STEVEN KALCH, and REBECCA )
E. KALCH, )
)
    Defendants-Respondents. )

APPEAL FROM THE CIRCUIT COURT OF TEXAS COUNTY

Honorable William E. Hickle, Circuit Judge

## AFFIRMED

Roberts Holdings, Inc. ("Appellant") appeals the dismissal of its suit in replevin to acquire possession of certain baking equipment alleged to be currently possessed by Becca's Barkery, Inc. ("Becca's Barkery"), Steven Kalch, and Rebecca E. Kalch ("Respondents") in Texas County. The case was dismissed under Rule 52.04(b) for an inability to join indispensable parties "without prejudice to the refiling of [Appellant's] claims in the Superior Court of Spokane County, Washington."[1]

---

[1] The relevant portions of Rule 52.04 provide:

> **(a) Persons to Be Joined if Feasible.** A person shall be joined in the action if: (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the

1

The trial court found that the dispute arose from "a failed business enterprise" between two families -- "[t]he Kalch family . . . and the Roberts family" -- and that "a joint venture agreement" ("Joint Venture Agreement") "obligated [DKS Ventures, LLC ("DKS")] to furnish the manufacturing equipment at no cost to the Kalches."  In return, DKS obtained "the partial ownership of Becca's Barkery[.]"  The trial court found that "Kevin Roberts, [Dave] Roberts[,[2]] and Stuart Roberts are the principals of three companies involved in performing the various parts of the . . . business arrangement [involving Respondents]: [DKS], Total Baking Solutions, LLC [("Total Baking Solutions")], and [Appellant]."  The trial court found that "because the transaction was carried out by several closely related business entities, orderly justice is only possible if all claims and parties are joined for hearing before one judge in one courtroom."

The trial court further found that the United States District Court for the Western District of Missouri had previously determined that, "based on a forum selection clause contained in the joint venture agreement[,]" "the state of Washington had exclusive

---

disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.  If the person has not been joined, the court shall order that the person be made a party.  If the person should join as a plaintiff but refuses to do so, the person may be made a defendant.

**(b) Determination by Court Whenever Joinder Not Feasible.**  If a person as described in Rule 52.04(a)(1) or Rule 52.04(a)(2) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it or should be dismissed, the absent party being thus regarded as indispensable.  The factors to be considered by the court include: (i) to what extent a judgment rendered in the person's absence might be prejudicial to that person or those already parties; (ii) the extent to which by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (iii) whether a judgment rendered in the person's absence will be adequate; and (iv) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

All rule references are to Missouri Court Rules (2013).  All statutory references are to RSMo 2000.
[2] In the instant case, there are references to "David Roberts," "David W. Roberts," and "Dave Roberts" in the pleadings and attached documents.  We understand the references to be to the same person, and for consistency, we will refer to "Dave Roberts" in accordance with the documents attached to Appellant's petition.

2

jurisdiction over the dispute[.]" As a result, the trial court found that it was "precluded" from hearing all claims and that "the only remaining forum [able] to fully dispense justice is that of the Superior Court of Spokane County, Washington."

In three points relied on, Appellant contends "[t]he trial court erred in dismissing [Appellant's] petition under [Rule] 52.04(b) because": (1) "the parties sought to be joined by Respondents are not necessary under Rule 52.04(a)" as "the only issue in a replevin action is the right of the plaintiff to possess the personal property at issue"; (2) "the trial court failed to articulate the grounds for dismissal under the four[-]part test required under" Rule 52.04(b); and (3) Texas County "is the only appropriate venue for replevin in that no other court can offer the remedy of replevin[.]" Finding no merit in any of these contentions, we affirm the dismissal.

### Facts and Procedural Background

Because the trial court dismissed Appellant's action based solely upon the pleadings and documents attached to them, we take our factual background from the legal file, including Appellant's petition ("the replevin petition"), documents attached to the replevin petition, Appellant's "**MOTION TO STRIKE [RESPONDENTS'] COUNTER PETITION AND [RESPONDENTS'] MOTION TO JOIN ADDITIONAL PARTIES**" ("the motion to strike"), and an order issued by the United States District Court for the Western District of Missouri that was incorporated into the motion to strike.

The Kalches reside in Missouri and own Becca's Barkery, "a business that produces dog biscuits, dog foods, and related products." The Roberts are "the principals of [DKS] and [Total Baking Solutions]."[3] In May 2010, Kevin Roberts drafted the "Joint Venture Agreement" in which "DKS agreed to lease equipment from Total Baking Solutions for a

---

[3] DKS is incorporated in Washington. Total Baking Solutions is incorporated in Ohio.

3

period of five years and provide that equipment to Becca's Barkery. After five years, title to the equipment would be transferred to Becca's Barkery." In return, the Kalches "agreed to transfer [to] DKS a 49% ownership interest in Becca's Barkery." The Joint Venture Agreement contained a forum selection clause which required any litigation concerning the agreement to be maintained in "Superior Court, Spokane County, Washington."

In September 2010, Appellant agreed to lease "certain baking equipment" ("the bakery equipment") to DKS under a written lease agreement ("the Lease"). A copy of the Lease was attached to the replevin petition as Exhibit A. The Lease was for a five-year term, "commencing on September 1, 2010[,]" and required DKS to make lease payments of $10,000 per month to Appellant.[4] DKS gave Appellant a "continuing security interest in the bakery equipment." Appellant alleged that "[d]uring 2010[,]" it provided the bakery equipment to DKS and DKS then provided it to Respondents. The Lease was signed only by Dave Roberts, who signed it on behalf of Appellant as lessor and on behalf of DKS as lessee. The Lease provided that in the event of default, Appellant "may enter [DKS's] premises and, without court order or other process of law, repossess and remove equipment either with or without notice to [DKS]." Additionally, the Lease required DKS, "[u]pon demand following a default," "to fully cooperate and assist [Appellant] in recovering the equipment from any Third-party through the rights afforded by the Security Agreement and applicable law." The Lease also had a provision that required any disputes involving the

---

[4] There appears to be some dispute over the identification of the baking equipment installed in Becca's Barkery. In a request for admissions, Appellant requested that Mrs. Kalch and Becca's Barkery admit that "equipment specified on Exhibit 'B' was delivered to" Becca's Barkery. The response in [**BECCA'S BARKERY'S] RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS**" stated that "**most of the equipment delivered to Becca's Barkery did not contain serial numbers, or serial numbers that are different than those contained in 'Exhibit B**[.]'" For its part, Appellant does not contend that it claims different baking equipment than that claimed by DKS.

4

Lease or the bakery equipment to be litigated in Spokane County, Washington Superior Court.

A "Security Agreement" ("the Security Agreement") was attached to the replevin petition as Exhibit B. The Security Agreement was also executed solely by Dave Roberts -- on behalf of Appellant as the secured party and on behalf of DKS as the debtor. The Security Agreement provided that the debtor's rights were those "under the Uniform Commercial Code in force in the State of Washington at the date of th[e] Security Agreement." The petition also incorporated a December 21, 2010 "UCC1 Initial Filing" form listing Appellant as the secured party and both Dave Roberts and Becca's Barkery as debtors. The Security Agreement covered "All equipment listed on Exhibit A attached hereto." No such exhibit to the Security Agreement was included in the legal file. The replevin petition avers that "[d]uring 2010 the [bakery] equipment was provided by [Appellant] to DKS wh[ich] then allowed [Respondents] to use it and it was installed in their business location in Texas County." DKS never made any lease payments to Appellant.

In May 2011, the Kalches filed suit in Texas County against DKS, the Roberts, and Total Baking Solutions. The defendants removed the case to federal court. The Kalches' amended complaint sought relief on seven counts, including one for fraudulent inducement and another for fraud. The defendants then successfully moved that the Kalches' amended complaint be dismissed based upon the forum selection clause contained in the Joint Venture Agreement. The United States district court found "that the agreed-upon forum selection clause should be enforced and that Washington has exclusive jurisdiction over this dispute"

and observed that the defendants had "state[d] that there [wa]s already a case pending between the parties in Washington."[5]

In June 2012, Appellant filed the instant action against Respondents in two counts. Count I sought replevin of "certain baking equipment" that DKS leased from Appellant in September 2010 and "$10,000 per month" as damages for detention of the bakery equipment.[6] Respondents' answer asserted that under the Joint Venture Agreement, DKS was to lease the baking equipment from Total Baking Solutions, and Respondents included a counter-petition seeking money damages for "false representations" made by Appellant.

Respondents also filed a "**MOTION TO COMPEL JOINDER OF PERSONS NEEDED FOR JUST ADJUDICATION**" ("motion for joinder") to compel the addition of

---

[5] The judgment in the instant case states

> [DKS] had filed an action against the Kalches in Spokane County Superior Court on May 24, 2011, several weeks after [DKS] had been sued in Missouri. The Kalches removed the Spokane County case to federal court, where it was pending at the time of [the dismissal of the case in the United States District Court for the Western District of Missouri]. After the dismissal of the Missouri claims [in the Missouri federal case], [DKS] moved to remand the federal case pending in Washington state back to Spokane County, again based on the forum selection clause of the joint venture agreement . . . . [and the federal court in Washington remanded that case] to Spokane County Superior Court. [The federal court in that case] specifically permitted the filing by the Kalches of their Missouri claims upon remand of the case to Spokane County Superior Court in the following language of [the] order, p. 13: "Accordingly, The Court grants DKS's motion to remand this lawsuit to Spokane County Superior Court, where Mrs. Kalch may assert her Missouri claims as compulsory counterclaims."

However, it appears that the Kalches were initially denied leave to amend their answer to assert counterclaims and a third-party complaint in the matter in Spokane County Superior Court. The judgment in the instant case went on to observe that

> the suit pending in Spokane county consists only of the claim by DKS against the Kalches. Meanwhile, the Kalches have been forbidden to bring any of the claims that they have against any of the Roberts family members or any of the Roberts entities, contrary to [the Washington federal court] order.

Appellant asserts in its brief that the Washington state case is pending and that "the Kalches have asserted their counterclaims" but it does not cite a page in the record as supporting that claim. At oral argument, counsel for the parties indicated that the Kalches have been permitted to assert their counterclaims in the Spokane county action.

[6] Count II, which sought damages for unjust enrichment or quantum meruit, was later voluntarily dismissed by Appellant.

DKS, Total Baking Solutions, and the Roberts to the instant action as "indispensable parties[.]" Respondents alleged that "[t]he additional parties are indispensable because [Appellant's] cause of action is based upon a contract between DKS and [Appellant, and Respondents] have claims against these additional parties who were a part of this transaction, said claims that are compulsory."

Appellant's motion to strike claimed that the "contract" underlying Respondents' counter-petition included a forum selection clause placing "'[e]xclusive jurisdiction and venue . . . in the Superior Court, Spokane County, Washington.'" Appellant asserted that "[t]here is another action pending between the parties in the state of Washington[,] pending in the Spokane County Superior Court, Cause No. 2011-02-02145-3 and [it] continues on the issues surrounding the contract, now asserted by [Respondents] in this action." Appellant alleged that its replevin action "has nothing to do with the contract alleged by [Respondents]." Appellant's motion to strike also referred to the order from the United States District Court for the Western District of Missouri and stated that "[Respondents] are barred by the doctrine of collateral estoppel as to those issues [against DKS, the Roberts, and Total Baking Solutions] in bringing the action in this forum."

In September 2012, Appellant moved for summary judgment and, *inter alia*, filed a supporting affidavit from Dave Roberts. The affidavit stated that Appellant leased "certain baking equipment" to DKS, that DKS "allowed [Respondents] to take possession of the bakery equipment and to start using same[,]" and that Appellant "was, and is, the owner of the bakery equipment . . . [which] remains in [Respondents'] possession."

Respondents opposed the motion for summary judgment, and the matter was set for hearing in February 2013. On the day of the hearing, Respondents provided the trial court

7

with copies of documents from the Washington litigation: the complaint filed in May 2011 in Washington Superior Court; the October 2011 order from the United States District Court for the Eastern District of Washington granting remand after argument; a "Motion for Leave to Amend Answer" filed in January 2013 in Washington Superior Court; the Washington Superior Court's February 2013 "Order Denying Defendants' Motion for Leave to Amend Answer," and a "Verbatim Report of Proceedings" from February 2013 in Washington Superior Court. Respondents also provided their amended complaint filed in the United States District Court for the Western District of Missouri and the order that subsequently dismissed that action.

In the complaint DKS filed in Washington Superior Court, DKS alleged that it "agreed to [provide] production equipment for use by [Becca's Barkery,] along with installation and initial start-up of the equipment[,]" and that the Kalches "refus[ed] to comply with their obligations under the Joint Venture Agreement[.]" DKS further alleged that the Kalches "continue to possess and use the equipment that DKS provided to produce product and income" and that the Kalches' "actions constitute conversion of the personal property belonging to DKS without lawful right." Among other remedies, DKS sought a judgment "declaring that DKS shall be provided access to and entitled to remove its property (replevin)."

In March 2013, the trial court denied Appellant's motion for summary judgment. It also took up Respondent's motion for joinder and found

> that the claims against the proposed additional parties are inextricably intertwined with the claim by [Appellant] in the instant case. However, the addition of the proposed additional parties is precluded by the federal court rulings requiring that the litigation of any claims against such parties take place in the Superior Court of Spokane County, Washington.

8

The trial court noted, however, that the parties' argument had not addressed whether Appellant's petition should be dismissed under Rule 52.04(b) and set a hearing at which the parties would be expected to address that question.

Although we cannot locate a docket entry indicating that Respondent had filed a motion to dismiss based upon Rule 52.04(b), Appellant filed both "**SUGGESTIONS IN OPPOSITION TO DISMISSAL PURSUANT TO RULE 52.04(B)**" and a "**RESPONSE TO [RESPONDENTS'] MOTION TO DISMISS**[.]" In the latter pleading, Appellant responded, *inter alia*, that "the Washington Court has been asked to review the issue of replevin for declaratory purposes between DKS and [the] Kalch[es]," but Appellant maintained that that fact did not conflict with "its right to possession be[ing] tested as to [Respondents] for baking equipment in Missouri."

During the argument on the motion to dismiss, "[c]ounsel for [Respondents] consented to personal jurisdiction over all [Respondents] by the Superior Court of Spokane County, Washington with respect to the claims now asserted by [Appellant]." In May 2013, the trial court entered its order dismissing the instant case without prejudice, noting that it had heard argument from the attorneys and had "review[ed] the entire file as well as correspondence and suggestions submitted by the parties after the April 3, 2013 hearing." The trial court found that "[alt]hough the Roberts argued in Missouri courts that the claims of the Kalches could only be heard in Spokane County, their position reversed once the Kalches sought to file their claims there." The trial court pointed to DKS's objection to the Kalches' motion to file an amended complaint, and the Washington court's denial of "the addition of the claims previously dismissed in Missouri in favor of Spokane County." The trial court stated that it was

9

concerned by the possibility that only one side of the competing litigants will have claims heard, but there is simply nothing that the [trial court] can do about it. Two federal courts have now specifically held that the claims by the Kalches cannot be brought in Missouri. Two federal courts have held that those claims must instead be brought in the Superior Court of Spokane County, Washington. Neither federal court order has been appealed by any party, and thus the [trial court] in Missouri is collaterally estopped from hearing any of the claims by the Kalches.

The trial court also found that "[a]s Missouri has been precluded from serving as that forum, the only remaining forum to fully dispense justice is that of the Superior Court of Spokane County, Washington." The trial court observed that if the final judgment is favorable to Appellant in Washington Superior Court on the replevin claim, then that judgment "can easily be registered as a foreign judgment in Missouri using the accelerated procedures contained in section 511.760[.]" The trial court concluded, after considering the four factors set forth in Rule 52.04(b), "that in equity and good conscience the instant action should not be allowed to proceed in the [trial court]."

No motion to amend the judgment was filed, and this appeal timely followed its entry.[7]

### Applicable Principles of Review and Governing Law

We first consider whether the judgment may be appealed because it dismissed the case without prejudice. Generally, an order dismissing a case without prejudice is not final for purposes of appeal, *State ex rel. Nixon v. Summit Inv. Co.*, 186 S.W.3d 428, 432 (Mo. App. S.D. 2006), but there are exceptions to that rule. *Id.* at 433. One such exception arises "where the dismissal has the practical effect of terminating the litigation in the form cast or

---

[7] After Appellant's notice of appeal was filed, this court issued an order to show cause why the appeal should not be dismissed because it was taken from an order not denominated as a "judgment" or "decree." We subsequently allowed the appeal to proceed after the trial court entered a July 2013 "**ORDER NUNC PRO TUNC**" "renominat[ing] the order as 'Order and Judgment of Dismissal Without Prejudice'" that stated the order was intended to "be final for purposes of appeal[.]"

10

in a plaintiff's chosen forum." ***Doe v. Visionaire Corp.***, 13 S.W.3d 674, 676 (Mo. App. E.D. 2000). Because the judgment precluded Appellant from proceeding in its chosen forum, that exception is applicable, and we have jurisdiction to hear the appeal.

"This court will 'affirm a trial court's decision under Rule 52.04 unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it misinterprets or misapplies the law.'" ***Dolphin Capital Corp. v. Schroeder***, 247 S.W.3d 93, 97 (Mo. App. W.D. 2008) (quoting ***ADP Dealer Servs. Grp. v. Carroll Motor Co.***, 195 S.W.3d 1, 9 (Mo. App. E.D. 2005) (internal citations omitted)). We review the dismissal *de novo*, and "[w]e accept all of plaintiff's averments as true and view the allegations in the light most favorable to the plaintiff." ***Vogt v. Emmons***, 158 S.W.3d 243, 247 (Mo. App. E.D. 2005).

**Analysis**

*Point I – Necessary Parties*

Appellant's first point asserts the petition was erroneously dismissed because the parties which Respondents sought to add were not necessary parties in that the only issue for purposes of replevin is whether the plaintiff is entitled to possession of the property. Appellant argues, "The issues in the case at bar are narrow and deal with [Appellant's] right to possession of the Equipment as weighed against those of Respondents." Appellant insists that "[t]he Roberts, DKS[,] and Total Baking Solutions either have no interest in the Equipment or have agreed contractually that [Appellant] has the superior right in the Equipment and the right to possess the Equipment at the time of default in the Lease [between Appellant and DKS]."

11

"A party must first be found necessary to a lawsuit before we consider whether that party is indispensable." *Heitz v. Kunkel*, 879 S.W.2d 770, 771 (Mo. App. S.D. 1994). "If the answer [to this preliminary question] is in the negative, no further consideration need be given to the indispensability of that party." *State ex rel. Twenty-Second Judicial Circuit v. Jones*, 823 S.W.2d 471, 475 (Mo. banc 1992). "A person is a necessary party if that person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may, as a practical matter, impair or impede the person's ability to protect that interest." *Citizens Ins. Co. of Am. v. Leiendecker*, 962 S.W.2d 446, 450 (Mo. App. E.D. 1998). "It has been determined that an 'interest' which compels joinder is not one which is merely consequential, remote or a conjectural possibility of being somehow affected by the result of an action." *Moschenross v. St. Louis Cnty.*, 188 S.W.3d 13, 25 (Mo. App. E.D. 2006). The interest "must be such a direct claim upon the subject matter of the action that the joined party will either gain or lose by direct operation of the judgment to be rendered." *State ex rel. Emcasco Ins. Co. v. Rush*, 546 S.W.2d 188, 197 (Mo. App. St.L.D. 1977). "If joinder of such a necessary party is not feasible, 'the court shall determine whether in equity and good conscience the action should proceed among the parties before it or should be dismissed, the absent party being thus regarded as indispensable.'" *Jones v. Jones*, 285 S.W.3d 356, 360 (Mo. App. S.D. 2009) (quoting Rule 52.04(b)).

"[T]he gist of [a] replevin action is to test plaintiff's right to immediate possession of the chattels and defendant's wrongful detention. Proof of title or ownership is not an inherent element of the action, although it might incidentally become involved." *Phillips v. Ockel*, 609 S.W.2d 228, 231 (Mo. App. E.D. 1980). The plaintiff must prove its "immediate

12

right to possession." ***Turman v. Schneider Bailey, Inc.***, 768 S.W.2d 108, 112 (Mo. App. W.D. 1988).

Appellant relies on ***First Nat'l Bank of Clayton v. Trimco Metal Prods. Co.***, 429 S.W.2d 276, 277 (Mo. 1968), in arguing that "[t]he fact that a third person may have some interest in the property will not preclude replevin by one having right to possession as against the Defendants <u>named in the suit</u>." (Capitalization and underlining as in Appellant's brief.)  In ***Trimco***, the actual owner of the equipment was dismissed from the suit, and the remaining claim by the bank for possession of the equipment against the debtor was allowed to proceed. ***Id.*** at 276-77.  But the debtor in ***Trimco*** had "admit[ted] the execution of the chattel mortgage.  This g[ave] the [b]ank, as against [the debtor], a 'special property or interest' in the equipment sufficient to sustain the [b]ank's action in replevin." ***Id.*** at 277. The court found that even though the actual owner "may be entitled to take possession of the property from the [b]ank[,]" the debtor could not "defend against its own chattel mortgage on the ground that it did not own the equipment." ***Id.***

***Trimco*** is inapposite because there is no agreement in the instant case between Appellant and Respondents that would give Appellant such a "special interest" and would demonstrate its right to take immediate possession of the baking equipment.  And while Appellant does not purport to claim *different* equipment than that also claimed by DKS, the pleadings suggest that there may be some dispute between Appellant and Respondents over the identification of the actual equipment provided to Respondents.  No dispute about the identity of the equipment at issue was apparent in ***Trimco.***

In addition to demonstrating a right to immediate possession, the plaintiff in a replevin action must also be entitled to *exclusive* possession of the property.  ***Vahey v.***

13

*Vahey*, 120 S.W.3d 288, 291 (Mo. App. E.D. 2003). As a result, "[w]here several parties have an ownership interest in the property, [and ownership is the basis of the right to possession], all of the owners must be joined in the suit." *Id.*; *but see* ***Foulke v. McIntosh***, 234 S.W.2d 805, 808 (Mo. App. Spfld.D. 1950) (holding that one of the two owners by tenancy in the entireties was able to maintain an action in replevin to reacquire property taken from the land). *Vahey* was a case in which four of seven family members entitled to share in the personal property of a decedent sued to recover the property. 120 S.W.3d at 290. On review, the court found that "[t]he trial court erred in proceeding with the action without the joinder of the remaining three owners." *Id.* at 291.

Here, the pleadings and their incorporated documents reveal that more than one party claims the right to possess the equipment, and there has been no finding that Appellant's right to possess is the superior one. DKS alleged in Washington Superior Court that the equipment is "its property," that the Kalches converted this property "belonging to DKS without lawful right[,]" and that the Kalches "continue to use the equipment without permission or right." In its seventh count against the Kalches, DKS sought a declaratory judgment that it "shall be provided access to and entitled to remove its property (replevin)."

As Respondents point out, Appellant is the only party to the instant lawsuit that signed the Lease, and Appellant acknowledges in its reply brief that it was not a party to the Joint Venture Agreement. As a result, whether Appellant's claim to possession of the property is superior to Respondents' claims relies -- at least in part -- upon the determination of Respondents' rights under the Joint Venture Agreement with DKS. Appellant attempts to avoid this problem by arguing in its reply brief that the claims of DKS and itself are not inconsistent in that DKS's right is "subject to the paramount rights of [Appellant]." This

14

argument ignores the fact that no such priority of rights as to the equipment held by Respondents has been established, and in asserting its right to possession of the baking equipment in the Washington Superior Court, DKS did not state that its rights were inferior to those of another.

Just as Appellant correctly argues that it would be inappropriate to disregard its corporate identity, so too the separate identity of DKS cannot be ignored. DKS's interest may be impeded if it is not joined as a party in Appellant's replevin claim (see Rule 52.04(a)(2)(i)), and if it were possible to join DKS, it would stand to gain or lose by the judgment rendered. *See Emcasco Ins. Co.*, 546 S.W.2d at 197. Further, the absence of DKS from the instant matter would leave Respondents "subject to a substantial risk of incurring double . . . or otherwise inconsistent obligations by reason of [Appellant's] claimed interest." Rule 52.04(a)(2)(ii).

There is no need to decide at this point whether the Roberts or Total Baking Solutions are also necessary parties to the replevin claim because DKS is a necessary party. Whether DKS is an indispensable party is not specifically contested in Appellant's first point; its argument is only that none of the parties suggested by Respondents were necessary parties. DKS, a necessary party, could not be joined in the instant action, and Appellant has failed to demonstrate that DKS is not an indispensable party. Point I fails.

*Point II – Sufficiency of the Language of the Judgment*

Point II contends the trial court did not "articulate the grounds for dismissal" as required under Rule 52.04(b). Appellant relies on two cases, *Ward v. Bank Midwest, NA*, 871 S.W.2d 649, 651 (Mo. App. W.D. 1994), and *Claas v. Miller*, 806 S.W.2d 141, 144 (Mo. App. W.D. 1991), for the principle that a trial court must follow the procedure laid out

15

in Rule 52.04: if a person is necessary, but their joinder is not feasible, then the "court must decide if the person is indispensable by considering four listed factors. Only if the person is determined to be indispensable and cannot be joined should the action be dismissed." ***Ward***, 871 S.W.2d at 651. "The failure of a trial court to follow the procedures in Rule 52.04 to make the proper determinations before granting a dismissal is grounds for reversing the trial court's order." ***Id.***; *see also* ***Claas***, 806 S.W.2d at 144 (because the trial court failed to make the determination required by Rule 52.04(b), the dismissal could not stand).

It is important to note that Appellant does not allege that the trial court failed to follow Rule 52.04(b). Appellant's claim is that the trial court failed to *articulate* its grounds for dismissal. To preserve such a claim, an appellant must comply with Rule 78.07(c), which provides; "In all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." "Since the amendment of Rule 78.07(c), claims based on a failure to make required findings are not preserved for appeal and are thereby waived unless raised in the trial court by a motion to amend the judgment." ***Stuart v. Ford***, 292 S.W.3d 508, 517 (Mo. App. S.D. 2009).[8]

Here, the trial court stated that it had "consider[ed] the four factors set forth in Rule 52.04(b), [but] conclude[d] that in equity and good conscience the instant action should not be allowed to proceed in the [trial court]." As earlier noted, Appellant did not file a motion to amend the judgment. As a result, Appellant did not give the trial court an opportunity to "show its work" in applying the four criteria set forth in Rule 52.04(b)(i)-(iv). At oral argument, Appellant's counsel suggested that a dismissal judgment could be treated

---

[8] "Rule 78.07(c) was amended effective January 1, 2005. Prior to the amendment, 'no post-trial motion was required to preserve an issue for appeal in a court-tried case.'" ***Id.*** (quoting ***Wilson-Trice v. Trice***, 191 S.W.3d 70, 72-73 (Mo. App. W.D. 2006).

differently than other judgments for purposes of Rule 78.07(c). We find no such authority for the suggestion, and the language of the rule itself provides that "in all cases" the claim regarding the sufficiency of the findings in the judgment must be preserved by including it in a motion to amend the judgment. Because Appellant's second point was not preserved for review, it is denied.

*Point III – Venue for Replevin in Missouri*

Appellant's third point contends the trial court erred in dismissing the petition because "Texas County . . . is the only appropriate venue" for its replevin claim as the remedy may not be obtained elsewhere. Appellant is correct that Missouri statutes provide that venue for a replevin suit is in the county in which the property is located.

> Suits commenced by attachment against the property of a person, or in replevin or claim and delivery of personal property, where the specific property is sought to be recovered, shall be brought in the county in which such property may be found; and in all cases where the defendant in actions in replevin or claim and delivery of personal property is a nonresident of the county in which the suit is brought, service shall be made on him as under like circumstances in suits by attachment.

Section 508.020. *See also Marston v. Rose-Elash*, 720 S.W.2d 783, 784 (Mo. App. W.D. 1986) (section 508.020 requires a replevin case to "be brought in the county where the property is found").

The trial court seemed to contemplate that a replevin action could be added to the pending litigation in Washington Superior Court when it stated that "[t]o the extent that one of the claims to be decided [in Washington Superior Court] is [Appellant]'s replevin claim, the final judgment, if favorable to [Appellant], can easily be registered as a foreign judgment in Missouri" under section 511.760.

17

We do not need to determine the extent of remedies available to Appellant in Washington (and subsequently here in Missouri by means of the registration of a foreign judgment) to decide Appellant's third point. Simply because venue for a replevin action would not lie in a Missouri court outside the county in which the property is located does not prevent the dismissal of a suit for failure to join an indispensable party, even if it means that the plaintiff is not afforded that relief. *Cf.* ***Goodkin v. 8182 Maryland Assocs. Ltd. P'ship***, 80 S.W.3d 484, 491 (Mo. App. E.D. 2002) (summary judgment in favor of defendant affirmed when statute of limitation had expired as to the general partner, an indispensable party).

Similarly, in ***Dolphin Capital Corp.***, the plaintiff's collection actions against seven defendants based on assigned rental agreements were dismissed. 247 S.W.3d at 94, 98. The defendants had counterclaimed based on theories of fraud and unenforceable adhesion contracts. *Id.* at 97. The reviewing court agreed with the trial court that the defendants' fraud claim could not "be fully adjudicated in [the original lessor's] absence" and the original lessor was therefore a necessary party. *Id.* at 98. That ruling was required even though it was "indisputable" that the original lessor could not be joined in the action due to his being under bankruptcy protection. *Id.* at 94, 98. The original lessor was found to be an indispensable party because "the allegations of fraud, as well as the disturbing inferences arising from the actions of [the plaintiff] and [the original lessor] clearly distinguish[ed] th[e] case from a garden-variety collections action." *Id.* at 98. The court refused to allow the plaintiff's case to go forward, finding that the "fact that [the original lessor] cannot be here should be [the plaintiff's] responsibility rather than that of the defendant-respondents[,]"

and "equity and good conscience demand that, in the absence of [the original lessor], the action be dismissed." *Id.*

Here, a competing claim for replevin has been asserted by another entity, and, as the trial court found, the underlying transaction at the heart of this dispute "was carried out by several closely related business entities, [such that] orderly justice is only possible if all claims and parties are joined for hearing before one judge in one courtroom." The litigation of those underlying claims has been moved to Washington Superior Court. We disagree with Appellant's contention that the dispute over the Joint Venture Agreement is irrelevant to a determination of who has the right to immediate possession of the baking equipment because one party to that agreement is also claiming that it provides such a right. Therefore, in equity and good conscience, it was appropriate for the trial court to dismiss the petition even though venue for a replevin claim would ordinarily lie in Texas County. Point III is also denied, and the judgment of dismissal is affirmed.

DON E. BURRELL, J. – OPINION AUTHOR

JEFFREY W. BATES, P.J. - CONCURS

MARY W. SHEFFIELD, J. - CONCURS