

# Missouri Court of Appeals

## Southern District

### Division One

LEWIS CHILDRESS, ANDREA HOPPER, )
CHRISTA CHILDRESS, LARRY )
CHILDRESS and GARY CHILDRESS, )
                                          )
          Petitioners-Respondents, )
                                          )
        v. )          No. SD35435
                                          )
ALLAN and TINA LOVINS, )      Filed: August 27, 2019
husband and wife, )
                                          )
          Respondents-Appellants. )

APPEAL FROM THE CIRCUIT COURT OF WEBSTER COUNTY

Honorable Kenneth F. Thompson, Associate Circuit Judge

*Before Lynch, P.J., Rahmeyer, J., and Francis, Jr., J.*

**<u>AFFIRMED IN PART AND REVERSED IN PART</u>**

PER CURIAM. Allan and Tina Lovins appeal the trial court's January 29, 2018 judgment that condemned the Childress Cemetery, which was located on land owned by the Lovins, vested title to the cemetery in Webster County, and assessed costs in the amount of $2,874.85 against the Lovins. Five members of the Childress family ("the Childress petitioners") sought the condemnation pursuant to sections 214.200 and

214.080 and Chapter 523 of Missouri's statutes.[1]  The Lovins raise four points.  We deny the first three points, but grant the fourth point and remand to the trial court for it to redetermine and reassess costs under Rule 86.09 rather than Rule 77.01 and section 214.120.[2]

**Facts and Procedural History**

*Trial*

A trial to the court occurred on August 10, 2017.  Larry B. Childress, who lived in Rogersville, Greene County, at the time of the trial and is a third cousin to Lewis, Christa and Gary Childress and a third cousin once removed to Andrea Hopper, testified as follows.  Larry lived on a farm located just south of the Childress Cemetery from the time he was born in 1947 until he left home in 1969.  Larry and his father, mother and brother have visited the Childress Cemetery "[m]any times" "over the years."  Larry's great-great grandparents "settled" on the property that now contains the Childress Cemetery "around 1850" and Larry believed started the Childress Cemetery "sometime in the 1850's" – a Childress family member was buried there at least as early as 1862.  Allan and Tina Lovins now own the land that contains the Childress Cemetery.  Larry's family has maintained the Childress Cemetery "over the years."  Larry's great-great and great grandparents and a great aunt are buried in the Childress Cemetery – the great aunt was "buried there fairly recently, the last – probably 20 years."  The most recent burial at the Childress Cemetery was in 2009, and was a Childress family member.  "There's vacant area within the cemetery for other burials" on a "first come first served" basis.

---

[1] All references to a specific section of a statute are to RSMo (2016).

[2] All references to rules are to the Missouri Court Rules (2019).

"[O]ver the years, there's been some difficulty for the family to get access to the cemetery" though Larry has "always managed to be able to get to the cemetery." In a letter dated March 21, 2017, the Childress family offered to pay Allan and Tina Lovins $1,500 for the Childress Cemetery, but that offer was rejected. Larry testified that the Childress petitioners "are petitioning the Court to condemn the property as a private cemetery to be deeded to the public for future maintenance and care of that cemetery of the people that are buried there and the future burials that will take place at that location."

Gary L. Childress, who lived in Branson at the time of the trial and is related to Lewis, Christa and Larry Childress and Andrea Hopper, added the following testimony. The deed that conveyed the land containing the Childress Cemetery "out of the Childress family" contained a restriction that "allow[s] the Childress family to have access to the property to maintain and care and continue the cemetery." Farmland surrounds the Childress Cemetery, and Gary has "seen corn there, and I know that sometimes it's pasture." In about 2007 during a "Childress reunion," Gary and numerous relatives were unable to reach the Childress Cemetery without walking because a corn crop "blocked" Gary and his relatives from driving a bus to the cemetery.

After the Childress petitioners rested, Allan Lovins took the witness stand and testified as follows. Allan and his wife Tina own a sixty-six acre tract that includes the Childress Cemetery. The Lovins purchased the tract in "about 2002, 2003 somewhere," and were aware the deed reserved "ingress and egress" to the cemetery to the Childress family. The Lovins grew corn "for at least five years, four or five years" and explained to the Childress family "that corn was just a 90-day event." During the years the Lovins grew corn, the Lovins followed the corn with wheat and pasture rotations. The wheat did

not prevent access to the cemetery, and the Lovins "left a route" through the corn for access to the cemetery. The Childress family could not understand the explanation so the Lovins switched to a hay crop, which grew very tall because of a "rain event" and caused the Childress family to threaten to sue. The Lovins "mowed" the cemetery "for around six years," and the Childress family paid for this service. A previous lawsuit resulted in an "agreement for . . . ingress and egress at that point in time." Allan believed he and his wife had given the Childress family ingress and egress.

The Lovins then rested, and there was no rebuttal evidence.

*Pleadings*

In their answer, the Lovins admitted (1) the Childress Cemetery was located in Webster County on land that they owned; (2) the Childress Cemetery "has been continuously used as a private burial ground for more than ten years and . . . has not been deeded to the public for the purposes of a burial ground;" (3) the Childress petitioners "seek title" to the Childress Cemetery "for the continued use as a burial cemetery;" and (4) despite good faith efforts, the Childress petitioners have been unable to acquire the Childress Cemetery from the Lovins. Though denied by the Lovins in their answer, the Childress petitioners alleged in their condemnation petition that the "purpose of the taking is to maintain, own, care for and provide the burial grounds in perpetuity for use by the public," and requested authority to, among other things, "[m]aintain the burial grounds of the cemetery," "[t]o prepare for future internments [sic]," and "[f]or all other uses normally associated with a burial cemetery." Among other things, the prayer of the condemnation petition requested that the trial court "vest in the public title[] to" the Childress Cemetery.

*Order of Condemnation and Judgment*

In an order of condemnation entered on August 17, 2017, the trial court found (1) the Childress petitioners "are five members of the public having an interest in the Childress Cemetery;" (2) "[t]he Childress Cemetery has been in continuous use as a private cemetery for more than ten years" and "has never been deeded to the public for the purpose of a burial ground;" and (3) "[t]he parties have, in good faith, negotiated to obtain the subject property without exercising condemnation concerning the property sought to be appropriated, but they have been unable to reach an agreement as to value." The order then decrees in part that "the property containing the Childress Cemetery and property rights be and stand condemned for the uses and purposes as set out in the Petitioners' Petition." Following the filing of a report of commissioners and the Childress petitioners' filing of a motion to review and tax costs in the amount of $3,699.85, the trial court, on January 29, 2018, entered a judgment that decreed the Childress Cemetery "shall be vested in fee simple title to Webster County," and assessed costs in the amount of $2,874.85 "to [the Lovins] in accordance with the Motion to Review and Tax Costs attached hereto and incorporated herein by reference."

**Analysis**

The Lovins assert four points on appeal. The first three points are similar, and claim the trial court "erred to the prejudice of [the Lovins] by erroneously declaring and applying the law in ordering a condemnation of the Childress Cemetery" (1) "in that the Childress Cemetery is the private property of [the Lovins] and its condemnation was taken for the private use of [the Childress petitioners] and was not for the primary benefit of the public" (Point I); (2) "in that [the Childress petitioners] did not constitute 'the

5

public' since they were seeking such condemnation for their private use and not for the primary benefit of the public" (Point II); and (3) "in that it was not 'absolutely necessary' to condemn or enlarge the Childress Cemetery since it has vacant space for future burials, and [the Childress petitioners] have the right to maintain and access the cemetery both by deed and by [statute]." In their fourth point, the Lovins contend that the trial court erred "by abusing its discretion and erroneously declaring and applying the law in taxing all costs against [the Lovins]" "in that such costs were incurred prior to or at the time of the filing of the report of the commissioners" and are required to be taxed against the Childress petitioners under Rule 86.09.

### *Standard of Review*

As with other court-tried cases, "'the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.' *Murphy [v. Carron]*, 536 S.W.2d [30,] 32 [(Mo. banc 1976)]." ***Planned Industrial Expansion Authority of Kansas City v. Ivanhoe Neighborhood Council***, 316 S.W.3d 418, 423 (Mo.App. W.D. 2010).

### *Points I, II and III*

Because of the similarity of these three points, we address all three together. Each of these points and the accompanying argument are not clearly stated, but we interpret the points to assert that the trial court "erroneously declar[ed] and appl[ied] the law" in that, as a matter of law, the evidence failed to establish essential elements of the Childress petitioners' action to condemn the Childress Cemetery – i.e., that (1) the condemnation was for a public purpose under the Missouri Constitution (Point I), (2) the Childress

6

petitioners "constitute[d] 'the public'" under the statute that describes the "way and manner" for the condemnation (Point II), and (3) the condemnation was "'absolutely necessary'" under the statute that describes the "way and manner" for the condemnation (Point III). *Cf.* Rule 73.01(b) ("After . . . presentation of plaintiff's evidence, the defendant may move by motion for a judgment on the grounds that upon the facts and the law the plaintiff is not entitled to relief.").[3] We reject each of these points because we cannot say the evidence was insufficient as a matter of law to permit the trial court to find or conclude that the Childress petitioners established each of these essential elements.[4]

As for public purpose (Point I), the evidence was clear that the Childress Cemetery had been used continuously as a burial ground for over 150 years, and that the Childress petitioners sought to condemn the cemetery for the purpose of continuing its use as a cemetery. The condemnation petition specifically asserted that the "purpose of the taking is to maintain, own, care for and provide the burial grounds in perpetuity for use by the public," and requested authority to, among other things, "[m]aintain the burial

---

[3] A somewhat similar argument that the challenged elements were not supported by substantial evidence perhaps also could have been made. Though perhaps hinted at in the argument under their first point (i.e., "the trial court erroneously declared and applied the law . . . as there was no finding (or even substantial evidence to support such a finding) that the condemnation would serve the constitutional requirement of public use"), the Lovins do not fairly make a not-supported-by-substantial-evidence argument in this appeal.

The Childress petitioners, in a motion to dismiss the Lovins' appeal, contend that the Lovins' first three points challenge the "form or language" of the trial court's judgment and should be dismissed because the Lovins did not preserve this challenge under Rule 78.07(c). We took the Childress petitioners' motion to dismiss with the case, and now deny the motion as to the Lovins' first three points because we do not interpret the Lovins' challenge in these points to be to the form or language of the trial court's judgment. *See Yonker v. Yonker*, 423 S.W.3d 848, 860 n.15 (Mo.App. S.D. 2014) (contrasting substantive claims with a challenge to the form or language of the judgment); and *Roberts Holdings, Inc. v. Becca's Barkery, Inc.*, 423 S.W.3d 920, 930 (Mo.App. S.D. 2014) (contrasting an argument that the trial court failed to articulate the grounds for dismissal required by a rule with an argument that the trial court failed to follow the rule).

[4] It is unclear to us whether an essential element of this action was that the condemnation was "absolutely necessary" under the statute that describes the "way and manner" for the condemnation. As a result, in our analysis, we assume but do not decide that an essential element of this action was that the condemnation was "absolutely necessary."

grounds of the cemetery," "[t]o prepare for future internments [sic]," and "[f]or all other uses normally associated with a burial cemetery."  Larry Childress testified to a similar purpose for the condemnation.  The prayer of the condemnation petition requested that the trial court "vest in the public title[] to" the Childress Cemetery.  In its order of condemnation, the trial court decreed in part that "the property containing the Childress Cemetery and property rights be and stand condemned for the uses and purposes as set out in the Petitioners' Petition," and entered a judgment that decreed the Childress Cemetery "shall be vested in fee simple title to Webster County."

With respect to whether the Childress petitioners "constitute[d] 'the public'" under the statute that describes the "way and manner" for the condemnation (Point II), the evidence was clear that the Childress petitioners were five individuals who were members of the public and had an interest in the condemnation of the Childress Cemetery for its continued use as a cemetery in perpetuity for use by the public.  This evidence is consistent with sections 214.200 and 214.080.  Section 214.200 provides:

> When lands shall have been continuously used as a public or private burial ground for a period of ten years or more and such land has not been deeded to the public for the purpose of a burial ground, a title may be obtained to such lands in the way and manner as is provided for the enlargement of burial grounds in section 214.080.

In turn, section 214.080 provides:

> Whenever it shall become *absolutely necessary* to enlarge any public burial ground or cemetery, and *when the public, to the number of five or more persons, interested in the enlargement of said burial grounds or cemetery*, and the owner or owners of the adjoining land, cannot agree as to the price to be paid for the same, or for any other cause cannot secure a title thereto, *the public, to the number of five or more persons,* may proceed to condemn the same, in the same manner as provided by law for condemnation, appropriation and valuation, in cases of lands taken for telegraph and railroad purposes; and on such condemnation, and the payment of the appraisement as therein provided, *the title of such land*

8

*shall vest in the public for the purposes and uses only for which it was taken*.

(Emphasis added.)

As to whether the condemnation was "'absolutely necessary'" under section 214.080 (Point III), the evidence showed a lengthy and unresolved impasse between members of the Childress family and the Lovins concerning access to, and ownership of, the Childress Cemetery including a previous lawsuit.

On this evidence, we are unable to say that the evidence was insufficient as a matter of law to permit the trial court to find or conclude that the Childress petitioners established (1) the condemnation was for a public purpose under the Missouri Constitution (Point I), (2) the Childress petitioners "constitute[d] 'the public'" under section 214.080 (Point II), and (3) the condemnation was "'absolutely necessary'" under section 214.080 (Point III). Points I, II and III are denied.

### *Point IV*

We grant the Lovins' fourth point and remand for a redetermination and reassessment of costs because we believe the trial court misapplied the law in assessing costs under Rule 77.01 and section 214.120 rather than under Rule 86.09.

Rule 86.01 provides: "In all condemnation proceedings, except [for instances not relevant to this appeal], the procedure to be followed shall be that provided for by these rules." In turn, Rule 86.09 provides:

> The cost of the condemnation proceeding shall be paid by the condemner, up to and including the filing and copying of the report of the commissioners; and the court, as to any costs made by subsequent litigation, may make such order as in its discretion may be deemed just. The court shall allow the commissioners a reasonable compensation for their services, which shall be taxed as costs in the proceedings.

9

All or almost all the costs assessed against the Lovins appear to have been incurred "up to and including the filing and copying of the report of the commissioners." The trial court declined to assess costs under Rule 86.09, and instead assessed costs under Rule 77.01 and section 214.120. In doing so, the trial court misapplied the law.

Rule 77.01 specifically provides that a prevailing party shall recover costs against the other party in a civil action "unless otherwise provided in these rules or by law." Further, the question of who pays costs is procedural, and:

> "[I]f there is a conflict between the Supreme Court's rules and a statute, the rule always prevails if it addresses practice, procedure or pleadings." *State ex rel. Union Elec. v. Barnes*, 893 S.W.2d 804, 805 (Mo. banc 1995) (citation omitted). Moreover, Missouri Supreme Court Rules may only be "'annulled or amended in whole or in part by a law' enacted solely for that purpose." *Id*. (citation omitted).

*Gabriel v. Saint Joseph, LLC*, 425 S.W.3d 133, 139-40 (Mo.App. W.D. 2013).[5] As a result, Rule 86.09 prevails over section 214.120.[6]

---

[5] Rule 41.01(d) requires a different analysis for civil actions "pending in the associate circuit division" under section 517.011.1. In those actions, Rule 41.01(d) provides that Rules 41 through 101 govern "except where otherwise provided by law." *See State ex rel. Waack v. Thornhill*, 515 S.W.3d 839 (Mo.App. E.D. 2017). There is no assertion by the parties or indication in the record that the Childress petitioners' cemetery condemnation action was eligible for filing in, or filed or pending in, the associate circuit division under section 517.011.1.

[6] In their motion to dismiss the Lovins' appeal, the Childress petitioners also requested that the Lovins' fourth point be dismissed because the Lovins' post-judgment payment of costs was a voluntary payment that rendered the Lovins' fourth point moot. As previously noted, we took the motion with the case and now also deny the motion as to the Lovins' fourth point. In their motion to dismiss, the Childress petitioners acknowledge that a payment made "to avoid the accrual of statutory interest" is not a voluntary payment that renders an appeal moot, but argue this rule does not apply because "[t]he trial court's judgment for costs did not include a provision for interest, and so [the Lovins] did not make the payment to avoid interest accrual." This argument overlooks, and counsel fails to identify for us in the motion or a subsequent brief, section 408.040 or *Dennis v. Riezman Berger, P.C.*, 529 S.W.3d 318 (Mo. banc 2017). Section 408.040.1 and .2 state in part:

> 1. Judgments shall accrue interest on the judgment balance as set forth in this section. The "judgment balance" is defined as the total amount of the judgment awarded on the day judgment is entered including, but not limited to, principal, prejudgment interest, and all costs and fees. . . .
> 2. In all nontort actions, interest shall be allowed on all money due upon any judgment or order of any court from the date judgment is entered by the trial court until satisfaction be made by payment, accord or sale of property; all such judgments and orders for money

The trial court's judgment is affirmed except that we remand for the trial court to redetermine and reassess costs under Rule 86.09.

---

upon contracts bearing more than nine percent interest shall bear the same interest borne by such contracts, and all other judgments and orders for money shall bear nine percent per annum until satisfaction made as aforesaid.

*Dennis* makes clear that nontort judgments for money bear post-judgment interest under this statute even in the absence of a specific award of interest in the judgment.